Nelson, by guardian ad litem, vs. Harrington.

NELSON, by guardian *ad litem*, Respondent, vs. HARRINGTON, Appellant.

*October 16 — November 8, 1888.*

PHYSICIANS: MALPRACTICE: EVIDENCE: PRACTICE. *(1) Pleading: Action, tort or contract? (2-4) Degree of skill and knowledge required of physicians: Schools of medicine: Clairvoyant physicians. (5) Negligence in employing physician. (6) Deposition of witness taken in another action. (7, 8) Improper remarks by counsel to jury.*

1. Although, in an action against a physician for malpractice, the complaint alleges the implied contract of the defendant to treat the plaintiff in a skilful and proper manner, yet the *gravamen* of the action being alleged to be that the defendant disregarded his duty in the premises by negligently, wrongfully, and carelessly failing to make a proper diagnosis of the plaintiff's disease and to prescribe proper remedies therefor, the action is one sounding in tort and not upon contract.

2. A physician or surgeon, or one who holds himself out as such, whether duly licensed or not, when he accepts an employment to treat a patient professionally, must exercise such reasonable care and skill in that behalf as is usually possessed and exercised by physicians or surgeons in good standing, of the same system or

school of practice, in the vicinity or locality of his practice, having due regard to the advanced state of medical or surgical science at the time.

3. To constitute a school of medicine under the foregoing rule, it must have rules and principles of practice in respect to the diagnosis and treatment of diseases, which each member is supposed to observe in any given case.

4. Clairvoyant physicians, not having any fixed principles or formulated rules for the treatment of diseases, do not constitute a school within the above rule, and must be held to the duty of treating their patients with the ordinary skill and knowledge of physicians in good standing practicing in that vicinity.

5. In an action against him for malpractice a clairvoyant physician cannot be heard to charge the plaintiff's father with negligence because, with full knowledge of the defendant's methods of diagnosis and prescription, he employed him to treat his son.

6. In an action against a physician for malpractice, a deposition of the plaintiff's father, taken in an action brought by him against the defendant for loss of his son's services caused by the same malpractice, is not admissible as evidence in chief on behalf of the defendant.

7. In an action for malpractice it was proved that the defendant placed "Dr." on his sign and prescriptions. In his argument to the jury plaintiff's counsel said that when he did so he violated the laws of Wisconsin. *Held*, that the remark was not a serious one, even if not true.

8. Plaintiff's counsel also began to comment on the fact that the defendant and certain physicians present had not been called as witnesses for the defendant, but the judge expressed his disapprobation of this line of remark, and instructed the jury, in his general charge, that they were to draw no presumptions from the fact that those persons were not called as witnesses. *Held*, that the defendant was not prejudiced.

APPEAL from the Circuit Court for *Dane* County.

This is an action brought to recover damages for the alleged malpractice of the defendant as a physician. The substance of the complaint is that for several years before September, 1885, the defendant had been engaged in the practice of medicine and surgery in the city of Madison, and during all that time advertised and held himself out to

the public as a physician, and attended to all such diseases and ailments of the human body as a physician is usually called upon to treat, and such as are ordinarily treated by physicians of good standing and repute in said city of Madison; that he also gave out that he possessed some mysterious power, insight, or skill, not possessed by physicians in general, and for that reason could cure diseases generally thought to be incurable, and could relieve ordinary diseases and ailments more speedily and effectually than other physicians in good standing and repute as such; that shortly before September 1, 1885, the plaintiff, *Thomas Nelson* (then about fifteen years of age), was afflicted with some disease of his right hip, and on or about that date his father called the defendant, as such physician, to attend him and treat him for said disease; that the defendant undertook to attend the plaintiff as a physician, and treat and care for him in a proper manner as such physician, but that, disregarding his duty in the premises, the defendant wrongfully and carelessly failed to make a proper or ordinary examination of the plaintiff, such as a physician of ordinary skill, care, or prudence would have made, and pronounced said disease to be rheumatism when it was in fact a disease of the hip joint, which disease has well-known, peculiar signs and symptoms, which a physician of ordinary skill and care would at once detect; that there are well-known and acknowledged remedies for such disease, which all physicians of ordinary skill and prudence invariably use in the treatment thereof; that the defendant, in disregard of his duty as such physician, negligently and unskilfully treated the plaintiff for rheumatism, and not hip-joint disease, and continued so to treat him until about the middle of the following January; that during such time the defendant encouraged the plaintiff to walk persistently and use his right leg in walking, asserting that walking was beneficial to him; that the plaintiff grew constantly worse under such treatment,

until he could not walk, and suffered great pain and distress during the time, but the defendant constantly asserted, when told he was getting worse, that he was in fact getting better; that in January, 1886, after the plaintiff had wholly lost the use of his leg, other physicians were called in, and by most persistent and thorough medical treatment the plaintiff has to some extent recovered the use of his leg, but will be a cripple for life; that if the defendant had treated the plaintiff properly he would have been speedily and completely restored to health, and would have recovered the full use of his leg, also that he would have been relieved in a great measure from the suffering he was compelled to endure.

The defendant answered that, during the time stated in the complaint, he had been what is commonly known and understood as a spiritualist and clairvoyant physician, and as such has treated diseases and ailments of the human body and prescribed for patients calling upon him for treatment; most of his practice having been in and about the city of Madison. The answer proceeds as follows: "That on the 1st day of September, 1885, the said plaintiff, in person or by his father, Tollef A. Nelson, called upon this defendant for treatment for some ailment of which he, the said plaintiff, was then suffering; but defendant alleges that whatever treatment he gave the said plaintiff was strictly in accordance with the ordinary and customary practice and system of practice as used and employed by spiritualists and clairvoyants in diagnosing, attending, and prescribing for diseases and ailments of the human body, and that he was employed by the said plaintiff and the said Tollef A. Nelson to treat the said *Thomas Nelson* only as a spiritualist and clairvoyant, and not in any manner as an ordinary physician or surgeon possessed of the ordinary knowledge or skill belonging to physicians and surgeons and doctors of medicine in the regular schools of practice; that

Nelson, by guardian ad litem, vs. Harrington.

the said Tollef A. Nelson and the said *Thomas Nelson* both well knew the manner of diagnosing and prescribing for diseases employed by this defendant, and well known that this defendant employed no other and had no other manner or method of determining or diagnosing diseases and ailments of the human body, before the said plaintiff came to this defendant; that said plaintiff came to this defendant desiring and expecting this defendant to diagnose said disease and prescribe for the same as a spiritualist and clairvoyant physician. Defendant further alleges, on information and belief, that the said *Thomas Nelson* was, at the time of said treatment, afflicted with some rheumatic affection of his limb and hip, from which he had been suffering for a long time prior to calling this defendant to treat said ailment."

The cause was tried by a jury, and resulted in a verdict and judgment for the plaintiff. The testimony and proceedings on the trial, so far as the same are essential to an understanding of the exceptions considered, are sufficiently stated in the opinion. The defendant appeals from the judgment.

For the appellant there was a brief by *Rogers & Hall* and *G. W. Bird*, and oral argument by *F. W. Hall*. They contended, *inter alia*, that an action of malpractice is essentially an action on contract. *Whittaker v. Collins*, 34 Minn. 299. The undertaking of the physician is that he will treat the patient according to the system or school which he professes and avows, and that he will use due care and skill according to the practice of that system or school. 3 Whart & S. Med. Jur. secs. 751, 769; Shearm. & Redf. on Neg. secs. 437, 435; Whart. on Neg. sec. 733; *Corsi v. Maritzek*, 4 E. D. Smith, 1; *Bowman v. Wood*, 1 Greene (Iowa), 441; *Comm. v. Thompson*, 6 Mass. 134; *Patten v. Wiggin*, 51 Me. 594; *McKleroy v. Sewell*, 73 Ga. 657; Story on Bailm. sec. 435. The remarks of counsel, per-

sisted in after objection by defendant and admonition by the court, could have no other effect than to seriously prejudice the defendant, and should work a reversal of this judgment. *Brown v. Swineford*, 44 Wis. 282; *Kaime v. Omro*, 49 id. 371; *State v. Clifford*, 58 id. 113, 124; *Elliott v. Espenhain*, 59 id. 272; *Baker v. Madison*, 62 id. 137. .

For the respondent there was a brief by *Pinney & Sanborn*, and oral argument by *S. U. Pinney*. They contended, among other things, that a person who assumes to be competent to treat a disease, and holds himself out to the public as such, is liable for any ignorance or negligent treatment thereof. *Pippin v. Shephard*, 11 Price, 400; *Wilmont v. Howard*, 39 Vt. 447; *Musser's Ex'r v. Chase*, 29 Ohio St. 577; *Patten v. Wiggin*, 51 Me. 594; *Tefft v. Wilcox*, 6 Kan. 46; *Smothers v. Hanks*, 34 Iowa, 286; *Carpenter v. Blake*, 60 Barb. 488; *S. C.* 50 N. Y. 696. Physicians who offer themselves to the public as practitioners, impliedly promise that they will use their best skill and judgment in ascertaining the nature of the malady and the mode of treatment best calculated to cure. *Reynolds v. Graves*, 3 Wis. 416; *Patten v. Wiggin*, 51 Me. 594; *Bellinger v. Craigue*, 31 Barb. 534; *Sumner v. Utley*, 7 Conn. 257; *Wood v. Clapp*, 4 Sneed, 65; *Landon v. Humphreys*, 9 Conn. 209; *Long v. Morrison*, 14 Ind. 596; *McCandless v. McWha*, 22 Pa. St. 261. It is immaterial whether or not the defendant is a licensed medical practitioner, provided he professes to be skilled in medicine and actually treats patients. *Musser's Ex'r v. Chase*, 29 Ohio St. 577; *Rex v. Spiller*, 5 Car. & P. 333; *Carpenter v. Blake*, 60 Barb. 488; *Rex v. Long*, 4 Car. & P. 398. When the case will admit of but one mode of treatment, the use of a different treatment is evidence of want of skill. A physician must conform to the established mode of treatment; if he departs from it he does so at his peril. *Carpenter v. Blake*, 60 Barb. 488; *Patten v. Wiggin*, 51 Me. 594. " The law has no

Nelson, by guardian ad litem, vs. Harrington.

allowance for quackery. It demands qualifications in the profession. He is bound to exercise his art or profession rightly and truly as he ought; for less than this he will be liable in damages." *Almond v. Nugent*, 34 Iowa, 300; *McCandless v. McWha*, 22 Pa. St. 261; *Rex v. Long*, 4 Car. & P. 398; *Rex v. Van Butchell*, 3 id. 629.

LYON, J. The question has been raised whether this is an action for the breach of a contract, or one sounding in tort for the alleged unskilful and negligent manner in which the defendant, as a physician, performed his duty to the plaintiff. Although the complaint alleges the implied contract of the defendant to treat the plaintiff in a skilful and proper manner, yet the *gravamen* of the action is alleged to be that the defendant disregarded his duty in the premises by negligently, wrongfully, and carelessly failing to make a proper diagnosis of the plaintiff's disease and to prescribe proper remedies therefor. These allegations characterize the action. They show it to be solely for a breach of defendant's duty as a physician, founded upon his legal obligations as such, without reference to the implied contract. The contract is stated in the complaint as mere matter of inducement, and might as well have been omitted. It must be held, therefore, that the action is for the breach of duty,— the negligence and wrong,— and not upon the contract. *Wood v. M. & St. P. R. Co.* 32 Wis. 398.

The general rule of law is that a physician or surgeon, or one who holds himself out as such, whether duly licensed or not, when he accepts an employment to treat a patient professionally, must exercise such reasonable care and skill in that behalf as is usually possessed and exercised by physicians or surgeons in good standing, of the same system or school of practice, in the vicinity or locality of his practice, having due regard to the advanced state of medical or surgical science at the time. This rule is elementary.

It has its foundation in most persuasive considerations of public policy. Its purpose is to protect the health and lives of the public, particularly of the weak or credulous, the ignorant or unwary, from the unskilfulness or negligence of medical practitioners, by holding such practitioners liable to respond in damages for the results of their unskilfulness or negligence. Citation of authorities to support the rule would be superfluous. It was substantially (perhaps not so fully) laid down and applied in *Gates v. Fleischer*, 67 Wis. 504, and is sustained by numerous cases, many of which are cited in the briefs of counsel on both sides.

The defendant is what is known as a clairvoyant physician, and held himself out, as other physicians do, as competent to treat diseases of the human system. He did not belong to, or practice in accordance with the rules of, any existing school of physicians governed by formulated rules for treating diseases and injuries, to which rules all practitioners of that school are supposed to adhere. The testimony shows that his mode of diagnosis and treatment consisted in voluntarily going into a sort of trance condition, and while in such condition to give a diagnosis of the case and prescribe for the ailment of the patient thus disclosed. He made no personal examination, applied no tests to discover the malady, and resorted to no other source of information as to the past or present condition of the plaintiff. Indeed, he did not profess to have been educated in the science of medicine. He trusted implicitly to the accuracy of his diagnosis thus made and of his prescriptions thus given.

The general rule above stated requires of one holding himself out as a physician the exercise of the same skill and care as is ordinarily exercised by physicians in good standing who belong to the same school of medicine and practice under the same rule. To constitute a school of medicine under this rule, it must have rules and principles of practice

for the guidance of all its members, as respects principles, diagnosis, and remedies, which each member is supposed to observe in any given case. Thus, any competent practitioner of any given school would treat a given case substantially the same as any other competent practitioner of the same school would treat it. One school may believe in the potency of drugs and blood-letting, and another may believe in the principle *similia similibus curantur;* still others may believe in the potency of water, or of roots and herbs; yet each school has its own peculiar principles and rules for the government of its practitioners in the treatment of diseases. Not so, however, with clairvoyant practice. True, the practice has but one mode of ascertaining what the disease is and the remedy therefor. This mode has already been stated. But the mode in which a physician acquires a knowledge of his profession has nothing to do with his school or system of practice. One person may acquire such knowledge from certain books; another from certain other books, which perhaps teach different principles; still another from oral communications, as lectures, etc., or from experience alone; and still another from his intuitions when in an abnormal mental state; yet these differences do not necessarily constitute separate schools of medicine. The clairvoyant and the practitioners of the allopathic or homeopathic system may belong to the same school or system, provided they adopt the same principles and observe the same rules of treatment. The methods by which a man acquires a knowledge of medical science is one thing, and the principles and rules which govern him in the practice of medicine is another and very different thing. This is just the difference between clairvoyant physicians as a class and the practitioners of a school or system of medical practice recognized in the general rule of professional ability above laid down. The regular physician of any school or system acquires his professional knowledge by the study of the general principles of

the science, and applies such knowledge to each particular case as it arises, while the clairvoyant physician may have no such general knowledge, but believes himself especially and effectually educated to treat each particular case as it is presented to him, without reference to any particular system or school.

These observations dispose of the exceptions based upon the rejection of testimony offered to show that the defendant practiced only as a clairvoyant physician. That was conclusively proved before, and the rejection of the testimony (if material under other circumstances) was of no importance. It should be observed that the answer of the defendant does not allege, and no testimony was given or offered to show, that clairvoyant physicians, as a class, treat diseases upon any fixed principles, or that rules have been formulated which each practitioner is supposed to follow in the treatment of diseases, as is the case with the schools or systems of medicine before mentioned. Clairvoyant physicians have a common mode of acquiring their knowledge of cases, but their methods of treatment may be contradictory and as numerous as are the practitioners, and no principle or rule of clairvoyant treatment be violated thereby.

The proposition that one holding himself out as a medical practitioner and as competent to treat human maladies, who accepts a person as a patient and treats him for disease, may, because he resorts to some peculiar method of determining the nature of the disease and the remedy therefor, be exonerated from all liability for unskilfulness on his part, no matter how serious the consequences may be, cannot be entertained. The proposition, if accepted as true, would, as already suggested, contravene a sound public policy.

It matters not that the patient, or those who are responsible for him, know the methods of the practitioner.

Nelson, by guardian ad litem, vs. Harrington.

The responsibility for malpractice must still be laid upon the latter. It should be stated in this connection that the father of the plaintiff, who employed the defendant to treat his son, testified that he so employed him because he believed him to be a skilful physician; that he did not depend on the trance business, but on the defendant, the same as he would on any other physician; and that he believed in him because he had performed remarkable cures.

It follows that the court properly refused to give an instruction proposed on behalf of the defendant in these words: "If defendant was a clairvoyant physician, and professed and held himself out to be such, and the plaintiff and his parents knew it, and at the time he was called to treat the plaintiff both parties understood and expected that he would treat him according to the approved practice of clairvoyant physicians, and that he did so treat him, and in strict accordance with the clairvoyant system of practice, and with the ordinary skill and knowledge of that system, then the plaintiff cannot recover, and your verdict must be for the defendant." Instead of the words, "with the ordinary skill and knowledge of that system," employed therein, it should read, "with the ordinary skill and knowledge of physicians in good standing, practicing in that vicinity."

Since the cause was argued our attention has been called to the late case of *Wheeler v. Sawyer*, decided by the supreme judicial court of Maine, and reported in 15 Atl. Rep. 67. The statutes of Maine allow any person to practice medicine who has obtained from the municipal officers of the town in which he resides a certificate of good moral character. The plaintiff had such certificate, and practiced according to the principles and methods of those calling themselves "Christian Scientists." The case shows that practitioners of Christian Science use no medicines, and the plaintiff used none. It has now become common knowl-

edge that their treatment is entirely mental. The action was for professional services. The objections to a recovery were "that the so-called ' Christian Science ' is a delusion; that its principles and methods are absurd; that its professors are charlatans; that no patient can possibly be benefited by their treatment." The court held all this immaterial, and said, in substance, that the patient got all he bargained for, and must pay for it the agreed price. There is no question of liability for malpractice in the case. On the contrary, the patient said he was improved under the treatment. Were the defendant in the present case authorized by law to practice medicine, and should a patient employ him to go into a clairvoyant state, and while in such state to tell him his malady and the remedy therefor, and agree to pay him a certain sum of money for such services, and were the defendant to render the service, doing the patient no injury, but a benefit rather, an action brought by the defendant to recover the stipulated compensation would be like the Maine case. We perceive no valid objection to a recovery by the plaintiff in either case. It goes without saying that we have here no such case for determination, and the Maine adjudication does not aid us.

We have not been referred to any case in the books of an action for malpractice against a clairvoyant physician (so-called), and have found none. It is cause for surprise if no such case has arisen; for it is believed that this method has been employed quite extensively for many years in different parts of the country. Whether the absence of such cases is to be accounted for on the theory that the bar and public have generally believed that this class of physicians are not legally responsible for want of skill, or because no member of it has been guilty of malpractice, or upon some other theory, is not here determined. Probably the fact that such cases have not come before the courts is not very significant. For want of them, however, we have been

compelled to decide this case solely in the light of element-
ary rules of law, which perhaps furnish just as safe basis
for judgment.  In this connection brief reference will be
made to a case cited by counsel for defendant in his argu-
ment which then impressed us as being nearer in point than
any other case cited.  It is that of *McKleroy v. Sewell*, 73
Ga. 657.  The court sustained an instruction to the jury in
these words: " If a man sends for a doctor, and the doctor
treats the patient while he, the doctor, is intoxicated, and
the patient afterwards calls in said doctor and continues to
employ him, it would be a waiver of all objections to the
doctor on account of his habit of intoxication."  The lan-
guage of this instruction (copied in the brief of counsel)
seemed broad enough to cut off an action for malpractice.
On looking into the case, however, we find the action, like
the Maine case, was by a physician to recover for profes-
sional services.  The court said: " Surely, one cannot ob-
ject to a doctor's bill on account of past intoxication, when
he keeps him as a family physician for years afterwards."
It is strongly intimated in that case that the defendant
might recoup in the action for damages caused by malprac-
tice.  If so, he might maintain an independent action for
such damages.  Hence the case is not in point and throws
no light on the present case.

   The claim that the defendant belonged to and treated the
plaintiff in accordance with the principles and rules of a
particular school of medicine, and is relieved from liability
in this action because thereof, having been negatived, the
law applicable to the case may, we think, be correctly sum-
marized as follows:  One who holds himself out as a
healer of diseases, and accepts employment as such, must
be held to the duty of reasonable skill in the exercise of his
vocation.  Failing in this, he must be held liable for any
damages proximately caused by unskilful treatment of his
patient.  This is simply applying the rule of liability to

which all persons are subject who hold themselves out, and accept employment, as experts in any profession, art, or trade. The theory upon which an expert practices his profession, art, or trade, the sources from whence he derived his knowledge of it, the tools and appliances he employs in the exercise of his calling, his methods of work, are not controlling considerations. The courts pass no judgment upon these matters. They look only to results. Thus, a person may rely entirely upon his genius or normal intuitions for some line of mechanical work, and hold himself out as an expert, and accept employment therein, without previous training or practice. The law holds him responsible if he does his work unskilfully, although he does the best he can. He takes the risk of the quality or accuracy of his genius or intuitions. On the same principle one who holds himself out as a medical expert, and accepts employment as a healer of disease, but who relies exclusively for diagnosis and remedies upon some occult influence exerted upon him, or some mental intuition received by him when in an abnormal condition, in like manner takes the risk of the quality or accuracy of such influence or intuition. If these move him so imperfectly or inaccurately that, although he pursues the course of treatment thus pointed out or indicated to him, he fails to treat the patient with reasonable skill, he is liable for the consequences. The only difference in the two cases is, the mechanic acts under normal, and the physician acts under abnormal, influence or intuitions. The law does not concern itself with the quality of the mechanic's genius, or with the reality or nature of such alleged occult influence or intuition which controls the physician in his treatment of his patient. It only takes cognizance of the question, Did the practitioner or expert render the service he undertook in a reasonably skilful manner? That question, as applied to the defendant, the jury, upon sufficient proofs, have answered in the negative.

As to the alleged negligence of the defendant in his treatment of the plaintiff, it is enough to say that any person who is legally responsible for his conduct is liable for all damages suffered by another which are the proximate result of his negligence or want of ordinary care. Of course, the defendant is subject to this rule; and here it may be observed that negligence cannot properly be imputed to the father of the plaintiff because he employed the defendant to treat his son, with full knowledge of the defendant's methods of diagnosis and prescription. At least, the defendant cannot be heard to charge the father with negligence in that behalf.

Perhaps a medical practitioner may protect himself from liability for unskilfulness by a special contract with his patient that he shall not be so liable; but in the absence of such a contract the practitioner must be held to his common-law liability. This rule was applied to a common carrier in *Conkey v. M. & St. P. R. Co.* 31 Wis. 619. DIXON, C. J., there said: "I think, in the absence of special contract or agreement to the contrary, the true policy of the law, now as much as ever and even more, is to adhere to the strict rules of liability on the part of common carriers established by the common law." Page 633. The reasons which there prevailed for adhering to that rule, and thus vindicating a sound public policy, are much more cogent in the case of the physician who deals with health and life instead of property.

The charge of the court to the jury, so far as we are able to perceive, is in strict accord with the views herein expressed. It is unnecessary to set it out at length. The testimony tends to show negligence and unskilfulness on the part of the defendant in his treatment of the plaintiff, and supports the verdict. Hence the judgment should not be disturbed unless some material error was committed on the trial. Some of the exceptions have already been deter-

mined.    Those not passed upon will now be briefly considered.

The defendant offered in evidence a deposition of plaintiff's father taken in a case brought by the father against the defendant for loss of his son's services, etc., caused by the same malpractice here complained of.    The court rejected the deposition as evidence in chief, but offered to receive it as evidence impeaching the testimony of the father, who had theretofore been examined as a witness on the trial in behalf of the plaintiff.    The ruling was clearly right.    It was an offer to prove the statements of a witness made at another time and place in a different cause, as evidence in chief against the plaintiff.    Of course, such evidence is inadmissible.

Certain objections were taken to remarks of counsel in argument.    It was proved that the defendant placed the abbreviation " Dr." on his sign and prescriptions.    Counsel said that when he did so he violated the laws of Wisconsin. The remark is not a very serious one, at most, even if not true.    We think, however, that it is a fair inference from the allegations of the answer, and from the proofs, that the defendant was not a regularly authorized medical practitioner under the laws of this state.    The only other objection of this character is that counsel for the plaintiff also commenced to comment to the jury on the fact that the defendant and certain physicians who were present in court had not been called by the defendant as witnesses. The judge expressed his disapprobation of this line of remark, and instructed the jury, in his general charge, that they were to draw no presumptions from the fact that those persons were not called as witnesses.    We are unable to perceive how the defendant could possibly be prejudiced by the remark of counsel, thus promptly disapproved and counteracted.    Besides, it is quite probable that counsel had the right to make such comment.

This disposes of all the exceptions upon which error is assigned adversely to the defendant.

*By the Court.*— The judgment of the circuit court is affirmed.