## SMALLWOOD v. PARR et al.
### No. 2381.

Court of Civil Appeals of Texas. Eastland.
July 16, 1943.

Scarborough, Yates & Scarborough, of Abilene, for appellant.

Wagstaff, Harwell, Douthit & Alvis, of Abilene, for appellees.

GRISSOM, Justice.

While John Smallwood was driving his cattle across the highway they were struck by a truck driven by S. H. Johnson, an employee of Ed Parr, acting within the course of his employment. Several head of cattle were killed and others were injured. Smallwood brought this suit to recover damages therefor against both Parr and Johnson. In addition to several grounds of primary negligence, among which were those grounds inquired about in issues submitted to the jury, as hereinafter shown, plaintiff alleged that if he were negligent, as alleged by defendants, that Johnson, the truck driver, discovered the cattle on the highway and knew and realized that the cattle were in a position of peril and thereafter "negligently failed to use the means at his command to prevent injuring said cattle, which said negligence was the direct and proximate cause of the damages and injuries sustained by Plaintiff * * *."

The jury failed to find that defendant's truck was without adequate brakes at the time of the collision, as charged by plaintiff. It found against plaintiff on all issues of primary negligence charged against defendants. The jury found that plaintiff was guilty of negligence in permitting his cattle to be on the paved portion of the

highway at the time and place in question and in failing to have a halter on his bull when he drove him on the highway, and that each of said acts of negligence on the part of plaintiff was a proximate cause of the collision. The jury found the value of the cattle killed to be $6,700 and $400 damages to those injured but not killed. The jury answered "No" to issue 14, which was "Do you find from a preponderance of the evidence that Plaintiff failed to give a proper warning of the presence of his cattle on the highway to the driver of the defendant's truck in sufficient time that said truck could be reasonably stopped?"

The issues submitted and the jury's answers thereto relative to discovered peril are as follows:

7. "Do you find from a preponderance of the evidence that the Plaintiff's cattle were in a position of grave peril immediately before the collision?"

"Yes."

8. "Do you find from a preponderance of the evidence that Defendant's truck driver before the collision discovered that said cattle were in a perilous position?"

"Yes."

9. "Do you find from a preponderance of the evidence that the driver of Defendant's truck, after said discovery, if any, of said perilous position of the cattle, could by the use of all the means at his command and with safety to himself and his truck have avoided the collision in question?" .

"Yes."

10. "Do you find from a preponderance of the evidence that it was negligence for the Defendant's truck driver to fail to avoid the collision as inquired about in the foregoing issue after the discovery of the perilous position of the cattle?"

"No."

11. "Do you find from a preponderance of the evidence that the negligence, if any, inquired about in the foregoing special issue was a proximate cause of the collision in question?"

(Not answered.)

Judgment was rendered on the verdict that plaintiff take nothing, and he has appealed.

The parties will be referred to as plaintiff and defendants, as they appeared in the trial court.

Plaintiff's first point is: "The error of the trial court in refusing to enter judgment for appellant on the verdict showing elements of discovered peril." Plaintiff contends that the answers to Issues 7, 8 and 9 establish defendant's liability under the doctrine of discovered peril, and that the answer to Issue 10 was an erroneous attempt by the jury to pass upon a question of law, made such by reason of their previous answers to Issues 7, 8 and 9. In other words, plaintiff says that when the jury found (7) that plaintiff's cattle were in a position of peril; (8) that Johnson "before the collision discovered that said cattle were in a perilous position"; and (9) that Johnson "after said discovery * * * of said perilous position of the cattle, could by the use of all the means at his command and with safety to himself and his truck have avoided the collision * * *", all of the elements of discovered peril prerequisite to a recovery by plaintiff had been determined in plaintiff's favor; and that such findings established conclusively the negligence of the defendants. Plaintiff also contends that the answer to Issue 10, that it was not negligence for Johnson to fail to avoid the collision after discovery of the perilous position of the cattle, was either an immaterial answer, not in conflict with the rest of the verdict, or it was an attempt by the jury to answer a question of law. That, in either event, it had no effect upon the remainder of the verdict. Plaintiff insists that the Supreme Court in Gulf, C. & S. R. Co. v. Lankford, 88 Tex. 499, 31 S.W. 355, 356, has held that Issue 10, that is, whether Johnson's failure to avoid the collision, after discovery of the perilous position of the cattle, became a question of law. That defendants' negligence was established as a matter of law by the answers to Issues 7, 8 and 9.

Although there are statements in cases cited by plaintiff that appear to support his contention that defendants' liability is established by the answers to Issues 7, 8 and 9, we are of the opinion that the decisions of our Supreme Court are to the effect, as applied to the facts of the instant case, that when Johnson, the truck driver, discovered the perilous position of plaintiff's cattle, Johnson's duty to use all the means within his power to prevent the accident, consistent with his own safety, was not absolute. That the legal duty imposed thereby on Johnson was only to exercise ordinary care to use all the means available to avoid the collision. In other words, a finding that Johnson's failure to exercise

ordinary care in the use of the means at hand to avoid the collision was a prerequisite to plaintiff's recovery; unless such negligence was established by the undisputed evidence. Johnson's negligence was not so established. His testimony raised the issue. His testimony, if believed, shows that he did everything reasonably possible to stop the truck before the collision.

In Gulf, C. & S. F. R. Co. v. Lankford, 88 Tex. 499, 503, 31 S.W. 355, the Supreme Court said:

"No effort was made to stop or divert the cars to another track, or avoid the injury, by defendant's servants.

"After giving correct charges upon the issues of defendant's negligence and plaintiff's contributory negligence, the court charged the jury as follows: 'If you believe from the evidence that plaintiff or his wife failed to exercise ordinary care, and that such failure contributed to the injury of plaintiff's wife, yet if you should find that before plaintiff's wife received her injuries, if she was injured, it became known to either of the agents or servants of the defendant, who were engaged in operating said engine and cars, that there was about to be a collision between said cars and the wagon in which plaintiff and his wife were riding and if this became known to such agent or servant in time for him to have stopped said cars or to have diverted them from the track upon which they were running, and if he could have done so by the means then at hand in time to have prevented said injuries, then you will find for the plaintiff.'

"It is urged that this charge is upon the weight of the evidence in that it virtually instructs the jury that a failure to stop or divert the cars would be negligence, whereas the question, whether such failure was negligence, under all the circumstances, should have been left to the jury.

"The question, then, is, did the court in said charge invade the province of the jury, and determine for them a question of fact which, under the law and the evidence, they could have rightfully determined otherwise? or, in other words, could the jury, under the evidence, after finding the facts they were required to find by the charge in order to find for plaintiff, have rightfully refused to find, that a failure to stop or divert the cars was negligence?

"An analysis of the charge shows that the jury were required to find from the evidence the following facts: (1) That, before plaintiff's wife was injured, it became *known* to one of defendant's servants operating the train that there was *about* to be *a collision* between the train and wagon; (2) that such fact was known to such servant *in time* for him to have stopped or diverted the cars; (3) that by the use of the means *then* at his command he could have stopped or diverted them *in time* to have prevented said injuries.

"The verdict must be taken as establishing each of said facts. In addition thereto, the undisputed evidence shows that neither of the servants of defendant engaged or concerned in moving said cars made any effort whatever to avoid the collision, which, according to the facts above found, they knew was going to happen.

"Stated briefly, the facts, found and undisputed as aforesaid, shows that a servant of the company engaged in propelling a car knows that there is an impendent collision which, but for his intervention, will happen between such car and a wagon, in which a number of persons are riding, which collision he has the means at hand to prevent by stopping or diverting the car, but makes *no effort to do so,* and the collision consequently occurs.

"Could the jury, with these facts established, rightfully have refused to find such servant negligent? We think not.

"With such facts found or admitted, there would have been no support for such a verdict. If such servants had not known there was about to be a collision, or if they had made any effort to prevent same, and the court had charged that a failure to resort to certain means would render defendant liable, an entirely different question would have been presented.

"We are of the opinion that there was no error in giving the charge.

"In the event the jury believed the servants of defendant did not know there was about to be a collision, but simply knew the horses were plunging along near the track, the question would have been for the jury to determine whether it was negligence to make no effort to stop or divert the car. The charge did not deal with this theory of the case, and defendant asked no special charge applicable thereto.

"Immediately following the charge above, the court gave the following charge: 'But unless you find from the evidence that such agent or servant knew, or by the ex-

ercise of ordinary care would have known, that there was about to be such collision, and unless you find that he knew or could have known this in time to have prevented said injury, and could have prevented it by the exercise of ordinary care, you will find for defendant.'

"In this charge the court was not presenting the circumstances which would render defendant liable, as it had done in the charge preceding, but was presenting a theory under which defendant would not be liable, and, if there was another theory, not embraced therein, under which defendant would not have been liable, a charge presenting such theory should have been asked. The charge was correct as far as it went, although we agree with appellant in the proposition that, Lankford being negligently on the track, such negligence would have defeated his recovery unless, after he was in peril, the agents of the defendant actually knew of his peril, and were then guilty of negligence in failing to avert the injury "

Attention is directed to the fact that the issues submitting discovered peril in the instant case omit the time element, held by the Supreme Court, in the opinion by Judge Critz in Northern Texas Traction Co. v. Weed, Tex.Com.App., 300 S.W. 41, 44, to be essential. The Supreme Court has said that the time element is the crucial issue and must be directly submitted. Turner v. Texas Co., Tex.Com.App., 159 S.W.2d 112, 115. In other words, the issues here submitted and the answers thereto upon which plaintiff insists liability of the defendants is established issues 7, 8 and 9), do not, at least expressly, find that Johnson discovered the peril of plaintiff's cattle *in time* to have avoided the collision by the use of the means at hand. In the Lankford case, supra, it was undisputed that the railway employees made "no effort" to avoid the injury. Certainly, if Johnson had discovered the perilous position of plaintiff's cattle in time that by the exercise of ordinary care in the use of the means at hand he could have avoided the collision but made "no effort" to do so, his liability would be established. Such were the facts in the Lankford case. As before stated, it is not shown by the undisputed evidence, or found by the jury, that Johnson made "no effort" to avoid the injury. If the jury believed his evidence, they thought Johnson made a very serious effort to stop the truck in time to avoid the collision by promptly applying all his brakes. The jury, in answer to Issue 10, found that Johnson was not negligent in failure to avoid the collision after discovery of the perilous position of the cattle.

In Feille v. San Antonio Traction Co., 48 Tex.Civ.App. 541, 107 S.W. 367, 369, writ refused, the court said: "The third special charge requested by plaintiff, the refusal of which is the basis of the third assignment of error, is as follows: 'If you believe from the evidence that defendant's motorman in charge of the car which struck plaintiff's buggy discovered the peril, if any, of plaintiff, in time to have prevented the accident, and you further believe that such motorman did not use all means in his power to prevent the accident consistent with safety to himself and passengers, then in such event you are instructed to find for the plaintiff regardless of whether plaintiffs were guilty of contributory negligence.' It would seem from the authorities that, if the motorman discovered plaintiffs' peril, his duty to use all the means in his power to prevent the accident, consistent with his safety, etc., was not absolute, but only to exercise ordinary care to use all the means in his power, etc., to that end. Beaty v. El Paso Electric R. Co., Tex.Civ.App., 91 S.W. 365; San Antonio & A. P. Ry. Co. v. McMillan, 100 Tex. 562, 102 S.W. 103, 104; San Antonio Traction Co. v. Kelleher [48 Tex.Civ.App. 421] 107 S.W. 64."

In Turner v. Texas Co., Tex.Com.App., 159 S.W.2d 112, 115, 118, the Supreme Court, in an opinion by Judge Smedley, said:

"It is held that the time of discovery is the crucial issue in discovered peril cases and that an issue presenting the element of time must be directly submitted * * *

"There must be also, of course, evidence tending to prove the third element, that is, that the person who caused the injury *failed,* after discovering the peril, *to exercise ordinary care in using the means at hand to avoid injury to the person in peril.* * * *

"We do not find in the issues the submission of the question whether the plaintiff was in a position of peril. The issue assumed that he was and is for that reason objectionable. Each of the three elements of discovered peril should be submitted separately as special issues. The plaintiff is

required to prove each of the three elements. Each should be treated as a special issue, required by Rule 277, Texas Rules of Civil Procedure, to be submitted distinctly and separately. *They are the issues necessary to sustain discovered peril as a ground of recovery.* The three elements are: (1) that the plaintiff was in a position of peril; (2) the actual discovery by the person who inflicted the injury of the perilous position of the plaintiff *in time* to have averted injury to him by the use of the means at hand; (3) the *failure* thereafter *to exercise ordinary care* in the use of the means at hand. * * *

"The trial court correctly submitted as separate issues the question whether the driver, after the discovery of plaintiff's peril, failed to exercise ordinary care, and the question of proximate cause. * * *" (Italics ours.)

In Trochta v. Missouri, K. & T. Ry. Co., Tex.Com.App., 218 S.W. 1038, 1039, the court said: "The jury found that the engineer was guilty of negligence in failing to sound the whistle, and that such negligence was the direct cause of the collision. This was a finding in effect that a man of ordinary prudence, under the circumstances, upon discovering the peril of deceased, would have sounded the whistle, instead of attempting to slow up the train. To relieve defendant of liability on the ground that the engineer did what he thought proper in the emergency to avoid the injury would, in effect, abolish the doctrine of discovered peril, except in cases of willful injury. *The test of liability is* not whether the engineer after discovering the peril of deceased acted in good faith in an effort to avoid the injury, but *whether he acted as a man of ordinary prudence would have acted under the circumstances. This was a question to be determined by the jury* from the evidence. The jury having found that the engineer was guilty of negligence, in failing to sound the whistle, and that such negligence was the proximate cause of the collision, the trial court properly rendered judgment for the plaintiffs." (Italics ours.)

In San Antonio & A. P. R. Co. v. McMillan, 100 Tex. 562, 102 S.W. 103, 104, the Supreme Court, in an opinion by Judge Brown, said: "When the engineer or fireman discovered that the object upon the tract was a man, and from his attitude they had no good reason to believe that he would leave the track, it became their duty to exercise ordinary care in applying and using all the means at hand consistent with its safety to stop the train or lessen its speed so as to avoid injuring such person. If the discovery of the deceased's peril was in time to have stopped the train or checked its speed, and the servants failed to use ordinary care in applying the means at hand whereby the injury occurred, the railroad company would be held liable therefor."

The following decisions are to the same effect: Wilson v. Southern Traction Co., 111 Tex. 361, 234 S.W. 663; Schaff v. Copass, Tex.Civ.App., 262 S.W. 234, 240; Surkey v. Smith, Tex.Civ.App., 136 S.W. 2d 893, 895, writ refused; Furst-Edwards & Co. v. St. Louis S. R. Co., Tex.Civ. App., 146 S.W. 1024, 1029, writ refused; Tumlinson v. San Antonio Brewing Association, Tex.Civ.App., 170 S.W.2d 620, 622; San Antonio & A. P. R. Co. v. McGill, Tex.Civ.App., 202 S.W. 338, 339; Northern Texas Traction Co. v. Singer, Tex.Civ.App., 34 S.W.2d 920; Dallas Ry. & Terminal Co. v. Bishop, Tex.Civ.App., 153 S.W.2d 298, 304; Gersdorf-Sloan Ambulance v. Kenty, Tex.Civ.App., 46 S.W.2d 469, 470; Missouri, K. & T. R. Co. v. Eyer, 96 Tex. 72, 74, 70 S.W. 529; Galveston, H. & S. A. Ry. Co. v. Price, Tex.Com.App., 240 S.W. 524, 528; Missouri, K. & T. R. Co. v. Reynolds, 103 Tex. 31, 35, 122 S.W. 531; San Antonio & A. P. R. Co. v. Hodges, 102 Tex. 524, 120 S.W. 848; Ft. Worth & D. C. R. Co. v. Shetter, 94 Tex. 196, 59 S.W. 533; Texas Electric Service Co. v. Kinkead, Tex.Civ.App., 84 S.W.2d 567, 569, writ dismissed; Vontstean v. Rollish, Tex.Civ.App., 133 S.W.2d 589, 591, writ refused; Dallas Ry. & Terminal Co. v. Bankston, Tex.Com.App., 51 S.W.2d 304, 308; Echols v. Duke, Tex.Civ.App., 102 S.W.2d 483, 488, writ dismissed; Smithee v. Texas & P. Ry. Co., Tex.Civ.App., 89 S.W.2d 461, 464.

◼◼ Plaintiff's second point is that the court erred in refusing to set aside the verdict on the ground of irreconcilable conflict in the findings. He contends that the answer to Issue 9, that Johnson after discovering the perilous position of the cattle, "could by the use of all the means at his command and with safety to himself and his truck have avoided the collision" is in conflict with the answer to Issue 10, that it was not negligence for Johnson to fail

to avoid the collision after discovery of the perilous position of the cattle. In answer to Issue 9, the jury merely found that Johnson "could" have avoided the collision, and in answer to Issue 10, that Johnson was not negligent in failing to avoid the collision. Under established rules of construction we are required to reconcile such findings if it can reasonably be done. It is apparent that what a person "could" do, or it was possible for him to do, and what a person in the exercise of ordinary care, or, differently stated, what an ordinarily prudent person would do under the circumstances of an emergency is not necessarily the same thing. There is no conflict in said answers.

Plaintiff offered to prove that the defendant Johnson, the driver of the truck that struck plaintiff's cattle, after the accident plead guilty to driving the truck without adequate brakes. Such testimony was offered through the justice of the peace and on cross examination of Johnson. Mr. Johnson testified that before the accident his brakes were in good condition. There was evidence that Mr. Johnson was driving the truck about 50 miles an hour; that Mr. Sanders, who was assisting Mr. Smallwood in moving the cattle from a pasture on one side of the highway to a pasture across the highway, had gone down the highway to the top of a small rise in the highway for the purpose of signaling any one driving from that direction toward the cattle so that the cattle might be safely moved across the highway. That Sanders was 75 to 100 yards from the cattle and in the direction from which Johnson appeared. There was evidence that from the place where the cattle were struck to where the truck could be seen was a distance of 335 feet; that from where Sanders was standing guard and waving at Johnson, he could have been plainly seen from Lawn, a distance of 400 to 500 yards; that Johnson made no effort to stop the truck; that he was going as fast when he struck the cattle as when he passed Sanders. Mr. Sanders and Mr. Salyers testified, in substance, that immediately after the accident Johnson stated to Sanders that he was helpless; that he couldn't stop because he didn't have any brakes; that he tried not to come on this trip but that his boss sent him. On cross examination of Mr. Johnson, in the absence of the jury, he testified that some time after the accident he came to Abilene and went to the Justice Court. Thereafter the following proceeding was had, in the absence of the jury:

"[Plaintiff's counsel] Q. Isn't it a fact that you came up here and went down to Judge Cunningham's office? [Defendant Johnson] A. Yes, sir.

"Q. And pleaded guilty to driving without breaks? A. No, sir. I didn't plead guilty because he didn't ask me. Not that I know of. I am pretty sure he didn't ask me.

"Q. And you paid a fine of ten dollars? A. Yes, sir. I paid a fine.

"Q. For driving without brakes, didn't you? Didn't you? A. Well,—

"Mr. Alvis: Now, your Honor —

"Mr. Scarborough: Let me make my bill?

"A. After this truck had this accident, they didn't know before I was driving without brakes.

"Q. Well, I understand, but didn't you go down there and plead guilty to driving that truck without brakes? A. Yes, sir.

"Q. And pay a ten dollar fine? A. Huh?

"Q. And paid a ten dollar fine? A. Yes, sir.

"[On redirect examination] Q. You said you pleaded guilty now, Mr. Johnson, do you know whether any complaint was ever filed or not? A. No, sir. I sure don't.

"Q. Now, did the highway patrolmen serve any papers on you to appear over here? A. No, sir. Sure didn't.

"Q. And who notified you to come to Abilene? A. This driver on this truck; there is two drivers, me and the other one; he was the one that come back and told me that the boss sent me word to report here.

"Q. Did he tell you who to report to? A. Yes, sir. I believe.

"Q. To Judge Cunningham? A. Yes, sir.

"Q. Did you report down there to Judge Cunningham? A. Yes, sir.

"Q. Did he show you any complaint that was filed against you? A. No, sir.

"Q. When you went down there, what did you tell Judge Cunningham? A. I says — I was standing there and he was

talking to somebody else there and he got through and he asked me what was for me and I told him I understand I had — owed a fine there and he said 'on what premises' and I told him and he said 'Oh, yes' and he looked it up and he said 'driving without brakes' and he didn't ask me whether I was pleading guilty or not guilty and I thought maybe I might talk him out of it or something like that and I told him that was my first time to ever have an accident and I had always been careful and he said 'Well' — he didn't pay me any attention and said, 'After you get through talking, it will still be ten dollars.'

"Q. Did he ask you if you plead guilty to driving a vehicle? A. No, sir.

"Q. On the highway without—with defective brakes? A. No, sir. He didn't ask me did I plead guilty or not.

"Q. Well, did you plead guilty to driving a vehicle on the highway without adequate brakes? A. No.

"[Examination by the Court] Q. You pay a ten dollar fine down there after you know what you were charged with? A. I paid a fine.

"Q. He told you you were charged with driving without brakes? A. Yes, sir."

Mr. Johnson denied stating to Mr. Sanders or Mr. Salyers at the scene of the accident that he didn't have any brakes and that he didn't want to make the trip. The justice of the peace had testified that Mr. Johnson appeared before him and pleaded guilty to driving without brakes; he said he could not find the complaint. It appears from his testimony there was a judgment of guilty on a plea of guilty to driving without adequate brakes; that frequently a highway patrolman would give a traffic offender a "ticket", and that such a person would come into the justice court and plead guilty without a complaint ever having been filed; that Johnson's case may have been disposed of in such manner. It is evident Mr. Johnson's testimony would not have shown conclusively that he pleaded guilty to driving without brakes at the time of the collision. Nevertheless, being a party to the suit and an interested witness, the jury might have concluded from his testimony, or from his testimony and that of Senator Cunningham, the Justice of the Peace, that Johnson had pleaded guilty to driving his truck without adequate brakes at the time of the collision with the Small-

wood cattle. If they had so believed they would probably have been inclined to accept the testimony of the two witnesses heretofore mentioned to the effect that Mr. Johnson at the time of the collision said he was helpless, that he couldn't stop his truck because he had no brakes; that he tried not to come on the trip, but that his boss sent him anyway. Such testimony was corroborative of the testimony of the witnesses Blankenship, Haynes, Sanders and Salyers, whose testimony, if believed, would have led to the conclusion that Mr. Sanders was standing guard at a place on the highway where he could have been seen by Johnson long before he reached the cattle and in time that if, as Johnson testified, he had good brakes and used those brakes promptly, he could have stopped his truck before he struck the cattle, and the further testimony of some of said witnesses that Johnson made no effort to stop; that he did not slow down; that he was going as fast when he struck the cattle as when he passed Sanders. Had such testimony been believed, as it might have if the jury had concluded that Johnson admitted before the justice of the peace that he had no brakes at the time of the collision, then a different verdict and judgment would probably have followed.

The testimony as to such admission by Johnson in the criminal case was, we think, admissible as an admission against interest. "Any act or conduct of a party from which it may be inferred that the facts in issue are not as he now claims may be introduced in evidence against him." Texas Law of Evidence (McCormick and Ray), p. 645, Sec. 501.

"Admissions by defendant in a criminal case may be competent as judicial admissions, against him, in a civil action involving the same subject matter. Where defendant has pleaded guilty to a criminal charge, such as for assault or battery, evidence of the fact of such plea, although the plea was subsequently withdrawn, or the record of his conviction on the plea of guilty, may be introduced, in a civil action, as an admission on his part against interest, and is also admissible in rebuttal to contradict defendant." 31 C.J.S., Evidence, § 300, p. 1070.

In Koons v. Rook, Tex.Com.App., 295 S.W. 592, 597, the court said: "The plaintiffs complain of the action of the trial court in excluding from the considera-

tion of the jury the evidence of the witness Calvert, to the effect that the defendant, while under arrest, told him that he shot to kill, but did not tell him anything about having shot in self-defense, or having shot in defense of his family, or having seen the lights from the car driven by plaintiffs shining on the porch, or about the plaintiffs having stopped the car near defendant's residence, or having seen a strange man on the premises. The court apparently excluded this testimony on the ground that, had the trial involved a criminal charge, the acts and declarations of the defendant would not have been admissible while under arrest. Inasmuch as this is a civil action, what the defendant may have said about the transaction which is of a material nature would be admissible in evidence against him, as for instance that he made the declaration that he shot to kill."

In Balaguer v. Macey, Tex.Civ.App., 238 S.W. 322, 323, writ dismissed, the court said: "In a criminal proceeding, appellant had entered a plea of guilty, confessing that the sale of the cider was in violation of the law, accepted his punishment, and paid his fine. As appellant had confessed in open court that the cider contained more than one-half of 1 per cent. of alcohol, this confession was admissible against him on the issue as to the character of the cider."

In Coons v. Lain, 168 S.W. 981, 983, writ refused, the court said: "We are, however, inclined to think the indictment and the plea of guilty thereunder in the federal court under the allegations made by appellee that the appellant had been indicted for sending this contract through the mails and advertising the same, and had pleaded guilty thereto, was admissible as evidence."

In Farmers' State Bank & Trust Co. v. Gorman Home Refinery, Tex.Com.App., 3 S.W.2d 65, 67, the court said: "The rule we are applying has its analogy in that applied to offers of compromise as evidence of admission of liability. It is well established that while an offer to compromise and thus buy one's peace is itself no evidence of such admission, yet, if in making such offer, independent of such offer, a statement is made which tends to show an admission of liability. It will be heard in evidence, the same as any other admission against interest. 23 C.

J. 314, § 349. Even the conduct of the party may be given in evidence when it tends to admit the fact in issue. Id. §§ 317, 353."

In Warburton v. Wilkinson, Tex.Civ. App., 182 S.W. 711, the court said: "The admissions of appellant as to the pasturage of the cattle, made in another suit between him and another party, were admissible in evidence in this suit. The voluntary admissions made by a party to a suit, made anywhere and under any circumstances, can be used in any suit to which he is a party. No reason can be given why the voluntary admissions of a litigant cannot be used against him, no matter where nor under what circumstances they were made. Greenleaf on Ev. § 341; Jones on Ev. § 683; Nelson v. Harrington, 72 Wis. 591, 40 N.W. 228, 1 L.R.A. 719, 7 Am.St.Rep. 900; Bilger v. Buchanan, Tex.Sup., 6 S.W. 408. The voluntary admission of a party is an admission, no matter where and how made, and can be used against him."

To the same effect are the holdings in Sumner v. Kinney, Tex.Civ.App., 136 S. W. 1192, 1195; Western Union Tel. Co. v. Stubbs, 43 Tex.Civ.App. 132, 94 S.W. 1083, 1089; Munk v. Stanfield, Tex.Civ. App., 100 S.W. 213; San Angelo Water, Light & Power Co. v. Baugh, Tex.Civ. App., 270 S.W. 1101, 1103, writ dismissed; Sterling v. De Laune, 47 Tex.Civ.App., 105 S.W. 1169, 1172; Hussmann v. Leavell & Sherman, Tex.Civ.App., 20 S.W. 2d 829, 831; Holton v. Hutchinson, Tex. Civ.App., 90 S.W.2d 1103, 1104; Hinrichs v. Texas & N. O. R. Co., Tex.Civ.App., 153 S.W.2d 859, 861; Dickens County v. Dobbins, Tex.Civ.App., 95 S.W.2d 153, 154.

The judgment is reversed and the cause remanded.

### On Motions for Rehearing

Both plaintiff and defendants have filed motions for rehearing. Plaintiff again urges that the jury's answers with reference to discovered peril entitle him to a judgment despite the finding that defendant's truck driver was not negligent in failing to avoid the collision after discovery of the perilous position of plaintiff's cattle. We have again considered this question and adhere to our original conclusion. Plaintiff's motion is overruled.

 The defendants say: "This Court has held that where a plaintiff has been convicted of two acts of negligence by a

jury, both of which the jury found to be a proximate cause of his injury, that it then becomes material as to whether the defendant was guilty of negligence." Defendants then express the opinion that such conclusion is not supported by any decision of any higher court "at any time or place." Our conclusion that a plaintiff, who has been convicted of contributory negligence, may recover against a defendant who has discovered plaintiff's perilous position in time that by the exercise of ordinary care in the use of the means at hand he could avoid the collision but fails to exercise such care, is not the announcement of a new doctrine. On the contrary, it is as old as the very ancient English case of Davies v. Mann. See 38 Am.Jur. 902. The doctrine of discovered peril is a qualification of the general rule that contributory negligence of the person injured bars a recovery. 18 C.J. 1053. Defendants' negligence, in connection with the question of discovered peril, is material. If it is not material then judgment should have been rendered on the verdict for plaintiff.

■ We have reviewed all of the testimony relative to plaintiff's attempt to show that Johnson pleaded guilty to driving with defective brakes. Unless the proffered testimony tended to show that Johnson's plea of guilty, if any, was referable to the time of his collision with plaintiff's cattle, it was not material and the court did not err in excluding it. Stated differently, proof that Johnson paid a fine for driving with defective brakes at some time other than the time of the collision is immaterial. The tendered testimony goes no further than to show that several days after the collision with Smallwood's cattle Johnson paid a fine for driving with defective brakes. There is no evidence that the charge, if any, had reference to the time of the collision. The testimony of the Justice of the Peace does not tend to show that the charge or conviction was for driving with defective brakes at the time of the collision. Johnson's testimony, considered as a whole, is definitely to the effect that he had adequate brakes until after the collision. After careful consideration of all the testimony we have concluded that we were in error in reversing the judgment because of the trial court's refusal to admit such testimony. Plaintiff did not discharge the burden resting on him to show the materiality of the rejected testimony. Sothern v. Vandyke, 114 N.J.L. 1, 174 A. 877; National Cattle Loan Co. v. Armstrong, Tex.Civ.App., 8 S.W.2d 767, 769, writ refused; Blackman v. Coffin, 300 Mass. 432, 15 N.E.2d 469. Defendants' motion is granted, our judgment of reversal is set aside and the trial court's judgment is affirmed.

FUNDERBURK, Justice (concurring).

In addition to the grounds upon which the judgment of the court below is, upon rehearing, affirmed according to the opinion, written by Judge GRISSOM, in which I concur, the affirmance, I think, may well rest on another ground.

It is, I think, a sound proposition of law that the doctrine of discovered peril "presupposes negligence on the part of plaintiff and has no application where the position of peril of the person or property injured is not due to negligence for which plaintiff is responsible." 45 C.J. p. 988, § 539. It is an equally sound proposition that "The term 'contributory negligence' necessarily presupposes negligence for which defendant is responsible, which would of itself sustain an action but for the concurrence of the contributory negligence." 45 C.J. p. 943, § 502. Lancaster v. Jarrett, Tex.Civ.App., 258 S.W. 271; Payne v. Kindel, Tex.Civ.App., 239 S.W. 1011; Adams v. Gulf, etc., R. Co., Tex.Civ.App., 105 S.W. 526. Corollary propositions are: "If the negligence for which either defendant or plaintiff is responsible is the sole proximate cause of the injury, there can be no contributory negligence, and where there is no actionable negligence for which defendant is responsible, the question whether contributory negligence exists is immaterial." 45 C.J. p. 943, § 502. For authorities supporting one or another of these propositions, see the following: Wilson v. Southern Traction Co., 111 Tex. 361, 234 S.W. 663; Martin, Wise & Fitzhugh v. Texas & P. R. Co., 87 Tex. 117, 26 S.W. 1052; Southland-Greyhound Lines v. Richardson, 126 Tex. 118, 86 S.W.2d 731; Texas & N. O. R. Co. v. Rooks, Tex.Com.App., 293 S.W. 554, 556, saying: "In fact, the doctrine of contributory negligence does not apply, unless there is negligence on both sides." St. Louis S. W. Ry. Co. v. Casseday, 92 Tex. 525, 50 S. W. 125; Koons v. Rook, Tex.Com.App., 295 S.W. 592; Reilly v. Buster, Tex.Civ. App., 52 S.W.2d 521.

In consonance with said propositions relating to contributory negligence is the further one that a plea of contributory negligence is properly the subject matter of a plea in confession and avoidance. 45 C.J. p. 1114, § 690. In other words, the sole function of a plea of contributory negligence is to provide the necessary basis in the pleadings for avoiding defendant's liability for negligence, either established or assumed. Can it be logically denied that a plea tendering the issues involving the doctrine of discovered peril is not also in its essential nature a confession and avoidance? I think not. Sound reasoning seems to me to force the conclusion that the sole function of such a plea is to furnish the basis for avoiding the usual effect, upon plaintiff's right to recover, of contributory negligence, either established or assumed.

If the above propositions are true, then a further corollary proposition deducible therefrom is that, since contributory negligence necessarily presupposes negligence of the defendant (established or assumed), and, since liability existing by virtue of the doctrine of discovered peril necessarily presupposes contributory negligence (established or assumed), then there can be no liability of defendant based alone upon discovered peril in any case in which the defendant is affirmatively acquitted of all charges of primary negligence.

In my opinion, accepted principles and sound reasoning force the conclusion, that any judgment based alone—as is the judgment in this case—upon the doctrine,· or principle, of discovered peril must, necessarily, rest upon a finding, or assumption, of the existence, of some primary negligence of the defendant which but for contributory negligence would entitle plaintiff to a recovery. There is, of course, absent such finding or basis for the assumption of its existence where, as here, the verdict of the jury has affirmatively acquitted the defendant of any negligence. If, in the terms of one of the foregoing propositions "where there is no actionable negligence for which defendant is responsible, the question whether contributory negligence exists is immaterial", then it is necessarily also true that where there is no actionable negligence for which defendant is responsible, its effect being to render immaterial any question of contributory negligence, a further question of discovered peril, which necessarily presupposes· contributory negligence, is likewise·immaterial.