ESTATE OF Cheryl MAKOS, by the Personal Representative, Calvin Makos and Calvin Makos Individually, Amanda Makos, Cody Makos and Ashley Makos, by their Guardian Ad Litem, Gary R. Weidner, Esq., Plaintiffs-Appellants,

v.

WISCONSIN MASONS HEALTH CARE FUND, Associates In Pathology, S.C., Dr. Steven E. Bodemer and Wisconsin Patients Compensation Fund, Defendants-Respondents,†

ABC INSURANCE COMPANY and DEF Insurance Company, Defendant.

Supreme Court

*No. 96–0174. Oral argument March 6, 1997.—Decided June 20, 1997.*

(Also reported in 564 N.W.2d 662.)

†Motion for reconsideration denied September 10, 1997.

BABLITCH, J., concurs.
WILCOX, J., joins.
CROOKS, J., concurs.
BRADLEY, J., dissents.
ABRAHAMSON, C.J., joins.
GESKE, J., took no part.

For the plaintiffs-appellants there were briefs (in the Supreme Court) by *Timothy J. Aiken, Kelly L. Centofanti* and *Aiken & Scoptur, S.C.,* Milwaukee and oral argument by *Timothy J. Aiken.*

For the defendants-respondents there was a brief (in the Supreme Court) by *Samuel J. Leib, Christine A. Koehler* and *Leib and Associates, S.C.,* Milwaukee and oral argument by *Samuel J. Leib.*

Amicus curiae brief was filed by *David M. Skoglind, Edward E. Robinson* and *Warshafsky, Rotter, Tarnoff, Reinhardt, & Bloch, S.C.,,* Milwaukee for the Wisconsin Academy of Trial Lawyers.

¶ 1. DONALD W. STEINMETZ, J. The issue in this case is whether Wis. Stat. § 893.55(1)(b),[1] a statute of repose that bars medical malpractice actions commenced more than five years from the date of the alleged act or omission without regard to the date of discovery, is constitutional. We hold that this statute is unconstitutional beyond a reasonable doubt as applied in this case because it was in violation of procedural due process as guaranteed by the Fourteenth Amendment to the United States Constitution[2] and in violation of the right to remedy provision of Article I, § 9 of the Wisconsin Constitution[3] to eliminate Cheryl

---

[1] Wis. Stat. § 893.55 provides, in relevant part, as follows:

> (1) [A]n action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider,. . .shall be commenced within the later of:
> (b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission.

[2] The Fourteenth Amendment to the United States Constitution provides in relevant part that "No State shall make or enforce any law which shall. . .deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV.

[3] Article I, § 9 of the Wisconsin Constitution guarantees every person a remedy for wrongs committed against him or her. It provides as follows:

> Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws.

Wis. Const. Art. I, sec. 9.

Makos' claim for injury before she knew or had the opportunity to know that she was injured.

¶ 2. The relevant facts in this case are undisputed. Cheryl Makos ("Makos" or "Cheryl Makos estate") had a growth on her left leg biopsied on February 13, 1985. Dr. Steven E. Bodemer of Associates in Pathology examined the growth and diagnosed it as non-malignant. Cheryl Makos was later diagnosed with metastatic malignant melanoma on May 27, 1994. At this time, the growth that was biopsied in 1985 was re-examined and found to be malignant.

¶ 3. Cheryl Makos filed this medical malpractice action in the Circuit Court for Marinette County against Dr. Bodemer and others on May 3, 1995. The action was filed within the one-year discovery rule set forth in Wis. Stat. § 893.55(1)(b), but more than five years after the expiration of the five-year statute of repose set forth in that section. Cheryl Makos died on May 19, 1995, due to illness and disease. Her estate and her family continue as parties in this action.

¶ 4. The defendants filed a motion to dismiss the complaint on the grounds that the statute of limitations had expired. The Circuit Court for Marinette County, Judge Charles D. Heath, granted the motion to dismiss on November 6, 1995. A judgment for the defendants was entered on December 11, 1995. The plaintiffs filed their notice of appeal on January 12, 1996, and the court of appeals certified the appeal to this court on July 30, 1996. We accepted the certification, and we now reverse the order and judgment of the trial court and remand for a trial.

¶ 5. We address the single issue of whether Wis. Stat. § 893.55(1)(b) is constitutional. Whether a statute is constitutional is a question of law that this court

reviews de novo. *Association of State Prosecutors v. Milwaukee County*, 199 Wis. 2d 549, 557, 544 N.W.2d 888 (1996) (citation omitted). Statutes are presumed to be constitutional; therefore, "[w]hen attacking the constitutionality of a statute, the contesting party must prove the unconstitutionality of the statute beyond a reasonable doubt." *Id.* (citations omitted).

¶ 6. Makos asserts that Wis. Stat. § 893.55(1)(b) is unconstitutional because it violates, *inter alia,* her procedural due process rights as guaranteed by the Fourteenth Amendment because she was never given her day in court. In *State ex rel. Strykowski v. Wilkie,* 81 Wis. 2d 491, 261 N.W.2d 434 (1978), this court explained as follows the right that every person has to his or her day in court:

> Whatever the precise status of the right of access to the courts, it is clear that due process is satisfied if the statutory procedures provide an opportunity to be heard in court at a meaningful time and in a meaningful manner. Due process is flexible and requires only such procedural protections as the particular situation demands.

*Id.* at 512, citing *Matthews v. Eldridge,* 424 U.S. 319, 333 (1976).[4]

¶ 7. As quoted above, this court has consistently held that procedural due process requires that an indi-

---

[4] The court in *State ex rel. Strykowski v. Wilkie,* 81 Wis. 2d 491, 261 N.W.2d 434 (1978), relied on the guarantee of due process of law provided by the Fourteenth Amendment to the United States Constitution and Article I, section 1 of the Wisconsin Constitution. All mention of due process hereinafter shall be understood to refer to both the United States and Wisconsin Constitutions.

vidual who has life, liberty, or property at stake must be afforded the "opportunity to be heard at a meaningful time and in a meaningful manner." *See, e.g., State v. Achterberg*, 201 Wis. 2d 291, 300, 548 N.W.2d 515 (1996); *State v. Nordness*, 128 Wis. 2d 15, 34, 381 N.W.2d 300 (1986); *In Interest of S.D.R.*, 109 Wis. 2d 567, 572, 326 N.W.2d 762 (1982); *Mid-Plains Telephone, Inc. v. Public Service Commission*, 56 Wis. 2d 780, 785–86, 202 N.W.2d 907 (1973). This opportunity to be heard, this day in court, is essential to the principles of fundamental fairness that are behind the Due Process Clause. *See generally Martin v. Richards*, 192 Wis. 2d 156, 197–98, 531 N.W.2d 70 (1995) (retroactive cap on damages with little notice to potential plaintiffs violates due process when notions of fundamental fairness are considered);[5] *State v. Heft*, 185 Wis. 2d 288, 302–03, 517 N.W.2d 494 (1994) (Due Process Clause requires that "prevailing notions of fundamental fairness" be considered). The question in the case at bar is whether, in keeping with the prevailing notions of fundamental fairness, Cheryl Makos was provided with a full and fair opportunity to be heard after she discovered that she had been injured.[6]

---

[5] While *Martin v. Richards* involved substantive, not procedural, due process issues, we rely on it here for its discussion of general notions of fundamental fairness.

[6] Relying on *Matthews v. Eldridge*, 424 U.S. 319 (1975) (statutorily conferred right to Social Security benefits requires adequate procedural protections) and *Martin v. Richards*, 192 Wis. 2d 156, 198, 531 N.W.2d 70 (1995) (statutorily conferred "right to unlimited damages" violated by retroactive legislation), we conclude that the plaintiff, Makos, had a statutorily conferred property right to file a claim against a health care provider who committed a wrong against her.

¶ 8. The fundamental fairness approach was recently taken by this court in another medical malpractice case, *Martin v. Richards*, 192 Wis. 2d 156. In *Martin*, a jury found that a physician negligently failed to inform the parents of a minor patient of the existence of alternate forms of care and treatment. The jury awarded the parents almost $5 million in damages. However, during the time period after the injury to the minor and before her parents filed suit, the legislature published a law that took effect only one day later. This law provided for a cap on noneconomic damages and was written so as to apply retroactively. This court found the retroactive application of the cap to be in violation of due process partly because such application offended notions of fundamental fairness. *See Martin*, 192 Wis. 2d at 197–98.

¶ 9. In *Martin*, this court found the one-day time limit in which the plaintiffs had to file their action so as not to lose their right to unlimited damages "inherently unfair." *Id.* at 209. In this case, Cheryl Makos was allowed zero days to file her action. Consistent with the holding in *Martin*, we find this to be fundamentally unfair and in violation of principles of due process. Cheryl Makos' estate is entitled to an opportunity to be heard.

¶ 10. On February 13, 1985, Cheryl Makos was told by Dr. Bodemer that the growth on her leg that had been biopsied was not malignant. Over nine years later, in May of 1994, she was diagnosed with metastatic malignant melanoma. It was not until this time when the growth from 1985 was re-examined that Cheryl Makos learned of Dr. Bodemer's initial misdiagnosis of her growth. Under the medical malpractice statute at issue in this case, Wis. Stat. § 893.55(1)(b), the statute of repose for filing an action against Dr.

Bodemer for the misdiagnosis in 1985 expired in February of 1990. This was over four years before Cheryl Makos was injured by the alleged negligence (leaving untreated malignancy in her system) or could have proven an injury. She did not and could not have discovered the alleged negligence of Dr. Bodemer within the five-year statutory limit.

¶ 11. We find that to preclude this action was in violation of Cheryl Makos' procedural due process rights. There is no basic fairness to eliminate her claim for injury before she knew or could have known that she was injured. The operation of the statute of repose effectively denied Cheryl Makos her opportunity to be heard because the doors of the courtroom were closed before she was even injured. Because her procedural due process rights as guaranteed by the Fourteenth Amendment were violated, we find Wis. Stat. § 893.55(1)(b) to be unconstitutional beyond a reasonable doubt as applied in this case.[7]

¶ 12. The defendants cite to two court of appeals' cases in which challenges to the constitutionality of Wis. Stat. § 893.55(1)(b) failed, *Miller v. Kretz*, 191 Wis. 2d 573, 531 N.W.2d 93 (Ct. App. 1995) and *Halverson v. Tydrich*, 156 Wis. 2d 202, 456 N.W.2d 852 (Ct. App. 1990), in support of their argument that Makos' claim

---

[7] Makos' situation is unique, and one that will likely arise only in rare situations. According to Staff Paper #10 found in the legislative drafting file for this statute, 98.9 percent of all adults and 95 percent of all minors alleging medical malpractice file claims within five years of the occurrence of the incident—the act or omission by the health care provider. Wisconsin Legislative Council, Malpractice Committee, *Analysis of Statistical Data and Recent Wisconsin Cases on Statutes of Limitation*, at 2 (1976).

should be barred by the statute of repose. We find that the reasoning in these cases is not applicable to the case at bar.

¶ 13. In *Halverson*, the court of appeals held that Wis. Stat. §§ 893.55(1) and 893.56 were constitutional *"as applied to Halverson." Halverson*, 156 Wis. 2d at 206 (emphasis added). Halverson claimed that the statutes as applied to him violated his equal protection and due process rights because of his status as a minor. The court disagreed, finding that "Halverson's minority is irrelevant under the facts of this case." *Id.* at 215. The court explained that "Halverson is identically situated with the adult who fails within five years to discover an injury caused by medical malpractice." *Id.* Consequently, Halverson's constitutional challenges to the statute failed.

¶ 14. In *Miller*, the plaintiff claimed that Wis. Stat. § 893.55(1)(b) was unconstitutional because it violated the Equal Protection Clauses of the Wisconsin and United States Constitutions. The court of appeals declined to find the statute unconstitutional in its entirety based on the equal protection argument because the legislature was effectuating a rational purpose in enacting the statute. The court explained that "[t]he classification of health care providers and the connected statutes of limitation are not irrational or arbitrary, but based on rational, reasonable criteria." *Miller*, 191 Wis. 2d at 585.

¶ 15. Neither the reasoning of the court of appeals in *Halverson* nor that in *Miller* applies to the situation in the case of Cheryl Makos. We are not invalidating the statute on its face as suggested by the plaintiff in *Miller*. We do not speak to whether different classes of plaintiffs or defendants are treated differently as asserted in both *Halverson* and *Miller*.

50

Instead, we conclude that Wis. Stat. § 893.55(1)(b) is unconstitutional as it is applied to Cheryl Makos in this case because her procedural due process rights and notions of fundamental fairness were violated by closing the doors of the courtroom to Cheryl Makos before she was even injured by the alleged act or omission.

¶ 16. The defendants in this action further contend that in order for Makos to prevail, this court must overrule its own recent precedent from *CLL Associates v. Arrowhead Pacific Corp.*, 174 Wis. 2d 604, 497 N.W.2d 115 (1993). We disagree. *CLL* involved the question of when a contract cause of action accrues under Wis. Stat. § 893.43, Wisconsin's six-year statute of limitations for contract actions. This court held "that under sec. 893.43, a contract cause of action accrues at the moment the contract is breached, regardless of whether the injured party knew or should have known that the breach occurred." *Id.* at 607. At first glance, it may seem that *CLL* would indeed preclude Cheryl Makos' medical malpractice action. However, *CLL* involved a statute of limitations while this case involves a statute of repose. These are distinct legal concepts that deserve to be treated as such.[8] Because we recognize the legal distinction between a statute of

---

[8] Black's Law Dictionary explains the distinctions as follows:

*Statute of repose.* "Statutes of limitations" extinguish, after period of time, right to prosecute accrued cause of action; "statute of repose," by contrast, limits potential liability by limiting time during which cause of action can arise. . . .It is distinguishable from statute of limitations, in that statute of repose cuts off right of action after specified time measured from delivery of product or completion of work, regardless of time of accrual. . .

Black's Law Dictionary 1411 (6th ed. 1990) (citations omitted).

limitations and a statute of repose, we find *CLL* inapplicable to the case at bar.

■

¶ 17. In addition to violating the due process guarantees of the Fourteenth Amendment, we hold that Wis. Stat. § 893.55(1)(b) as applied to Cheryl Makos in this action violates Article I, § 9 of the Wisconsin Constitution. Article I, § 9 guarantees that every person shall be afforded a remedy for wrongs committed against his or her "person, property, or character."[9] This court has long held that the "certain remedy" clause of this provision, while not guaranteeing to litigants the exact remedy they desire, entitles Wisconsin residents "to their day in court." *Metzger v. Department of Taxation*, 35 Wis. 2d 119, 129, 150 N.W.2d 431 (1967), citing *New York Life Ins. Co. v. State*, 192 Wis. 404, 412, 211 N.W. 288, 212 N.W. 801 (1927). *See also Neuhaus v. Clark County*, 14 Wis. 2d 222, 111 N.W.2d 180 (1961). If there is a statutory foundation for a lawsuit, a plaintiff has the right to his

---

[9] An increasing number of states are applying their own state constitution's "right to remedy" or "open courts" provisions to situations involving statutes of repose. For a detailed discussion of medical malpractice statutes of repose in relation to "right to remedy" provisions, see Christopher J. Trombeth, *The Unconstitutionality of Medical Malpractice Statutes of Repose: Judicial Conscience Versus Legislative Will*, 34 Vill. L. Rev. 397 (1989). Trombeth spells out the differences between statutes of limitation and statutes of repose. He also provides a history of statutes of repose and a summary of trends in recent years with respect to medical malpractice statutes of repose and their treatment in state courts. *See also* David Schuman, *The Right to a Remedy*, 65 Temp. L. Rev. 1197 (1992); Daniel W. Lewis, *Utah's Emerging Constitutional Weapon—The Open Courts Provision: Condemain v. University Hospital*, 1990 B.Y.U. L. Rev. 1107.

or her day in court. *See Oliver v. Travelers Ins. Co.*, 103 Wis. 2d 644, 309 N.W.2d 383 (Ct. App. 1981).

¶ 18. In *Kallas Millwork Corp. v. Square D Co.*, 66 Wis. 2d 382, 225 N.W.2d 454 (1975), this court found unconstitutional Wis. Stat. § 893.155, a six-year statute of repose covering improvements to real property. In addition to invalidating the statute on its face for improper classifications, this court noted that the statute would foreclose redress by plaintiffs because it expired long before any injury actually occurred to them. Consequently, this court found that because "the statute deprives a plaintiff of a remedy for a wrong that is recognized by the laws of the state," it is "therefore also unconstitutional under art. I, sec. 9, of the Wisconsin Constitution." *Id.* at 384.

¶ 19. The situation of Cheryl Makos is similar to that of the plaintiffs in *Kallas*. In the case at bar, the Wisconsin Statutes provide that anyone who is injured by an act or omission of a health care provider shall have a right to recover damages. *See* Wis. Stat. Ch. 655. However, under Wis. Stat. § 893.55(1)(b), the statute of repose expired over four years before Cheryl Makos knew or should have known that she was allegedly injured by the misdiagnosis in February of 1985. Like the court in *Kallas*, we find that the application of this statute to Cheryl Makos violates Article I, § 9 of the Wisconsin Constitution by depriving her of a remedy for a wrong that is clearly recognized by the laws of this state—a wrong that she did not discover until after her claim was barred by the statute of repose.[10]

---

[10] As the amicus curiae Wisconsin Academy of Trial Lawyers notes, other states have struck down statutes of repose for medical negligence claims as violative of their own state constitutions' "right to remedy" or "open courts" provisions. *See McCollum v. Sisters of Charity of Nazareth Health Corp.*, 799

¶ 20. In conclusion, we hold that Wis. Stat. § 893.55(1)(b) is unconstitutional beyond a reasonable doubt as applied to Cheryl Makos under these particular facts. It violates both her procedural due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution and her right to a remedy as guaranteed by Article I, § 9 of the Wisconsin Constitution[11] because it is fundamentally unfair to have closed the doors of the courtroom on Cheryl Makos before she was even injured by the act or omission alleged.

¶ 21. For the foregoing reasons, we reverse the order of the trial court granting the defendants' motion to dismiss and remand for a trial on the issue of the alleged medical malpractice committed by Dr. Bodemer.

*By the Court.*—Reversed and cause remanded.

---

S.W.2d 15, 19 (Ky. 1990) (five-year statute of repose for claims of negligence or malpractice against physicians, surgeons, dentists, or hospitals violates open courts provision of Kentucky Constitution); *Hardy v. VerMeulen,* 512 N.E.2d 626, 629 (Ohio 1987) (four-year statute of repose, as applied to medical malpractice claims, violates the right-to-a-remedy provision of the Ohio Constitution); *Nelson v. Krusen,* 678 S.W.2d 918, 923 (Tex. 1984) (two-year statute of repose for medical malpractice actions violates open courts provision of the Texas Constitution). *See also* Christopher J. Trombeth, *The Unconstitutionality of Medical Malpractice Statutes of Repose: Judicial Conscience Versus Legislative Will,* 34 Vill. L. Rev. 397 (1989).

[11] Makos raises several other challenges to Wis. Stat. § 893.55(1)(b), including the assertions that it violates equal protection and substantive due process. However, because we find the statute unconstitutional as applied under the facts of this case, we decline to reach these other issues.

¶ 22. Justice Janine P. Geske did not participate.

¶ 23. WILLIAM A. BABLITCH, J. *(concurring)*. I concur in the mandate reversing and remanding this case for a trial on the issue of the alleged medical malpractice committed by Dr. Bodemar. I cannot join its rationale.

¶ 24. I frame the issue as follows: whether a diagnosis is a "treatment," "operation," or "omission" within the meaning of the statute. It is fundamental that this court does not reach constitutional issues unnecessarily. Here, I conclude that the statute itself resolves the issue of whether a diagnosis comes within the terms of Wis. Stat. § 893.55: it does not. Accordingly, I respectfully concur.

¶ 25. The relevant facts are undisputed. Cheryl Makos had a growth on her left leg biopsied on February 13, 1985. Dr. Steven Bodemer examined the biopsied tissue. His diagnosis was that the growth was not malignant. That diagnosis was later found to be incorrect: it was malignant. Unfortunately for Cheryl Makos, the misdiagnosis was not discovered until the five year statute of repose had run. Even more tragically, it killed her. She died on May 19, 1995.

¶ 26. The statute, in relevant part, states: "[A]n action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider. . .shall be commenced within. . .(b). . .five years from the date of the act or omission."

¶ 27. A diagnosis is neither an operation nor an omission. Thus, the only issue is whether a diagnosis is a "treatment" within the meaning of the statute.

¶ 28. The statutes are replete with instances in which the legislature indicates that there is a difference between "diagnosis" and "treatment." *See* Wis. Stats. § 448.01(8) (" 'Podiatry' or 'podiatric medicine and surgery' means that branch or system of treating the sick which is limited to *the diagnosis, or mechanical, medical or surgical treatment or treatment by the use of drugs*, of the feet") (emphasis added); § 448.01(9) (" 'Practice of medicine and surgery' means:. . .(b) [t]o apply principles or techniques of medical sciences in the *diagnosis or prevention* of any of the conditions described in par. (a) and in sub. (2)") (emphasis added); § 448.08 (" 'Hospital' means an institution. . .which is primarily engaged in providing facilities for diagnostic and therapeutic services for the *surgical and medical diagnosis, treatment and care* . . .") (emphasis added); § 655.02(1)(i) ("[T]his chapter applies to. . .[a]n entity operated in this state that is an affiliate of a hospital and that provides *diagnosis or treatment of, or care for*") (emphasis added); § 655.27(3)(b)2 ("With respect to fees paid by physicians, the rule shall provide for not more than 4 payment classifications, based upon the amount of surgery performed and the risk of *diagnostic and therapeutic services provided or procedures performed.*") (emphasis added). In addition, when defining the "practice of medicine and surgery," the legislature refers separately to the "exam[ination] into the fact, condition or cause of human health or disease," i.e., diagnosis, and the treatment of human health or disease: "or, to treat, operate, prescribe or advise for the same." Wis. Stat. § 448.01(9)(a). Accordingly, it can safely be said that the legislature does distinguish the terms, and uses the term "treatment" when it means treatment, not diagnosis. Its failure to use the term diagnosis in this statute is, I believe, conclusive on the

issue of whether the legislature intended to include diagnosis within the term treatment. It did not. Had the legislature so intended, it would have used both, as it did many times in treating the same general subject matter of medical practice and health care liability.

¶ 29. Counsel for the plaintiff did not raise this statutory construction argument in its brief. When asked why at oral argument, plaintiff's counsel considered it and seemingly without benefit of research or reflection, opined that it might be inconsistent with *Martin* to hold that the term treatment in this statute of repose does not include diagnosis. Counsel's concerns are without merit.

¶ 30. In *Martin v. Richards*, 192 Wis. 2d 156, 531 N.W.2d 70 (1995), the statute under scrutiny was the informed consent statute, Wis. Stat. § 448.30. That statute was rich with legislative and case law history. Specifically, we noted that in adopting § 448.30, the Wisconsin legislature codified the standard articulated in *Scaria v. St. Paul Fire & Marine Ins. Co.*, 68 Wis. 2d 1, 227 N.W.2d 647 (1975). *Martin*, 192 Wis. 2d at 174. We cited to the Analysis by the Legislative Reference Bureau, 1981 A.B. 941: "This bill places in the statutes the standard of care that physicians are required to meet under *Scaria*." *Martin*, 192 Wis. 2d at 174. In that case, the plaintiff's injuries resulted from complications associated with an aortogram, a diagnostic procedure.

¶ 31. We took care to point out that only with respect to the informed consent statute was there no difference: "The distinction between diagnostic and medical treatments is not in and of itself significant *to an analysis of informed consent*." *Martin*, 192 Wis. 2d at 175 (emphasis added). Throughout the case, we went to great lengths to distinguish the two terms: "We are

57

not dealing primarily with the professional competence nor the quality of the services rendered by a doctor in his *diagnosis or treatment*." *Id.* at 173 (emphasis added). "[W]hat is reasonably necessary for a reasonable person to make an intelligent decision with respect to the *choices of treatment or diagnosis*." *Id.* at 174 (emphasis added). *Also see, Id.* at 175 ("with respect to the choices of *treatment or diagnosis*"); *Id.* at 176 ("the existence of any methods of *diagnosis or treatment*"); *Id.* ("with respect to the choices of *treatment or diagnosis*"); *Id.* ("*to treat* a patient *or attempt to diagnose* a medical problem"); *Id.* ("to request an *alternative treatment or method of diagnosis*"); *Id.* at 182 ("the choices of *treatment or diagnosis*, a reasonable person. . .would have wanted to know.") (emphasis added).

¶ 32. Thus, in *Martin*, the history of the informed consent statute compelled the result. Here, in construing this statute of repose, Wis. Stat. § 893.55(1)(b), we have no such history. We have the words of the statute before us, and the words do not include the term "diagnosis." When faced with the task of construing this limiting statute, we must interpret the statute strictly:

> [T]his court, in accordance with generally accepted standards of jurisprudence, has interpreted statutes of limitation so that no person's cause of action will be barred unless clearly mandated by the legislature. . . .In accordance with that general philosophy of insuring that litigants shall have their day in court unless clearly barred, words of doubtful or ambivalent import have been construed by this court to bar only those actions the legislature intended to extinguish.

*Saunders v. DEC International, Inc.*, 85 Wis. 2d 70, 74, 270 N.W.2d 176 (1978).

¶ 33. This statute fails to show a clear mandate to include diagnosis within its ban. The legislature has shown by repeated example it knows the difference between "treatment" and "diagnosis." Had the legislature intended that diagnosis be part of the statute, it could have easily done so as it had in numerous instances. It did not.

¶ 34. I would prefer that we request further briefs from the parties on the issue as I have framed it. Failing that, I join the mandate of the lead opinion but not its rationale. I would hold that a misdiagnosis as occurred here does not come within the meaning of the statute. I concur.[1]

¶ 35. I am authorized to state that Justice Jon P. Wilcox joins this concurring opinion.

¶ 36. N. PATRICK CROOKS, J. (concurring). Due to the application of the statute of repose contained in Wis. Stat. § 893.55(1)(b), neither Cheryl Makos nor her Estate (collectively "Makos") have any possibility of recovery even though a legal wrong may have been committed. Furthermore, it is undisputed that Makos could not have discovered the injury until after the statute of repose had run; therefore, the statute of repose has completely denied Makos the right to

---

[1] The dissent raises the possibility that the rationale of this concurring opinion raises equal protection concerns. I disagree. The statute is presumed constitutional. *Milwaukee Brewers Baseball Club v. Wisconsin Dep't. of Health & Social Services*, 130 Wis. 2d 79, 98–99, 375 N.W.2d 220 (1986). It is presumed the legislature had a rational basis for distinguishing diagnosis from treatment. *Id.* One can easily conclude that the legislature perceived that differences such as frequency of claims, amounts of claims, or a myriad of other differences justified the distinction.

bring a medical malpractice claim. Under these circumstances, and based on the legal principles discussed herein, I conclude that the statute of repose is unconstitutional beyond a reasonable doubt. It deprives Makos of the right to a remedy in violation of Article I, Section 9 of the Wisconsin Constitution. I therefore join that portion of the lead opinion written by Justice Steinmetz which involves art. I, § 9. However, since Makos prevails on this basis, I do not reach the issues of procedural due process, substantive due process, or equal protection. In addition, although I agree with the rationale set forth in the lead opinion regarding art. I, § 9, I write separately to further explain my reasons for concluding that Makos has been deprived of the right to a remedy in violation of art. I, § 9, and to suggest a framework for future cases.[1] Accordingly, I join the majority in reversing the circuit court's order and judgment, and remanding this cause for a trial.

¶ 37. Article I, Section 9 of the Wisconsin Constitution, commonly referred to as the "remedy for wrongs" provision, provides:

> Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws.

---

[1] I do not attempt to analyze prior cases of this court on the basis of the framework suggested herein.

This provision, and thirty-eight similar state constitutional provisions,[2] originally derive from Chapter 40 of the Magna Carta, in which King John promised: "To no one will we sell, to no one will we refuse or delay, right or justice." David Schuman, *The Right to a Remedy*, 65 Temp. L. Rev. 1197, 1199 (1992); *see also Mulder v. Acme-Cleveland Corp.*, 95 Wis. 2d 173, 189–90 n.3, 290 N.W.2d 276 (1980) (quoting *Christianson v. Pioneer Furniture Co.*, 101 Wis. 343, 347–48, 77 N.W. 174, 77 N.W. 917 (1898)). This promise was intended to prevent the practice of selling writs, which were bribes "demanded and taken to procure the benefits of the laws." *Mulder*, 95 Wis. 2d at 189–90 n.3; *see also* Schuman, *supra*, at 1199. Subsequently, in his commentaries on the Magna Carta, Sir Edward Coke interpreted King John's promise as follows: "[E]very subject. . .may take his remedy by the course of the law and have justice and right for the injury done to him, freely without sale, fully without any denial, and speedily without delay." *See Mulder*, 95 Wis. 2d at 189–90 n.3; Schuman, *supra*, at 1199–1200. By interpreting Chapter 40 in this manner, Coke was attempting to address problems involving judicial corruption that had persisted since the days of the Magna Carta, such as interference with the courts by the king. Jonathan M. Hoffman, 74 Or. L. Rev. 1279, 1293–95 (1995). Thus, Coke used Chapter 40 to support his position that the judiciary should be a branch independent from the king. *Id.* at 1293–95, 1308, 1311–12.

---

[2] *See* David Schuman, *The Right to a Remedy*, 65 Temp. L. Rev. 1197, 1201–02 (1992) (thirty-nine states have a right to remedy provision in their respective state constitutions). David Schuman is an Associate Professor and Associate Dean at the University of Oregon Law School.

¶ 38. Early framers of state constitutions took the language of their respective right to remedy provisions from Coke's restatement, and subsequent constitutional framers likewise borrowed such language from previously-enacted state constitutions. *Id.* at 1284. However, as Professor David Schuman has determined, the purpose behind such provisions was not to protect against judicial corruption, as it had been during the time of Coke or King John. Schuman, *supra* at 1200–01. As Professor Schuman explains: "By the last quarter of the eighteenth century, during which the American remedy guarantees first appeared, the focus of popular distrust had shifted from the King's courts to the people's representatives." *Id.* Thus, state right to remedy provisions were intended to address the problems of "renegade legislatures" by "vesting increased power in the judiciary." *Id.*

¶ 39. Consistent with this historical purpose, this court has determined that art. I, § 9 "is primarily addressed to the right of persons to have access to the courts and to obtain justice on the basis of the law as it in fact exists." *Mulder*, 95 Wis. 2d at 189. However, art. I, § 9, in and of itself, confers no rights. *Id.* Accordingly, art. I, § 9 "does not guarantee a remedy for every species of injury, but only such as results from an invasion or an infringement of a legal right or a failure to discharge a legal duty." *Scholberg v. Itnyre*, 264 Wis. 211, 213, 58 N.W.2d 698 (1953) (quoting 16 C.J.S. *Constitutional Law* § 709). Thus, in order for art. I, § 9 to have possible application, "it must first be established that plaintiff has suffered a legal injury or wrong by reason of defendant's conduct." *Id.* Such a legal injury or wrong exists where an individual has an independent legislatively-recognized right, *see Mulder*, 95 Wis. 2d at 189–90 n.3; *Kallas Millwork Corp. v. Square D Co.*, 66

Wis. 2d 382, 384, 393, 225 N.W.2d 454 (1975), or common-law right to bring a cause of action, *see Collins v. Eli Lilly Co.*, 116 Wis. 2d 166, 181–82, 342 N.W.2d 37, *cert. denied sub nom. E.R. Squibb & Sons, Inc. v. Collins*, 469 U.S. 826 (1984).

¶ 40. In Wisconsin, an individual has a common-law right to bring a medical malpractice action. *See, e.g., Skinner v. American Bible Soc'y*, 92 Wis. 209, 65 N.W. 1037 (1896); *Nelson v. Harrington*, 72 Wis. 591, 40 N.W. 228 (1888); *Gates v. Fleischer*, 67 Wis. 504, 30 N.W. 674 (1886); *Quinn v. Higgins*, 63 Wis. 664, 24 N.W. 482 (1885); *Reynolds v. Graves*, 3 Wis. 371 (1854). Moreover, the legislature modified this common-law right in 1975 when it enacted ch. 655, which established an exclusive procedure for bringing a medical malpractice action. *See State ex rel. Strykowski v. Wilkie*, 81 Wis. 2d 491, 499, 261 N.W.2d 434 491 (1978). Consequently, the right to bring a medical malpractice action, subject to the applicable conditions of ch. 655, is also a legislatively-recognized right. *See Martin v. Richards*, 192 Wis. 2d 156, 206–09, 531 N.W.2d 70 (1995).

¶ 41. However, my inquiry does not end here, because even where an independent common-law or legislatively-recognized right to bring a cause of action exists, the legislature may modify, reduce, or eliminate this right under certain circumstances without violating art. I, § 9. *See Von Baumbach v. Bade*, 9 Wis. 510, 514 (1859) (art. I, § 9 "is complied with, whatever changes may be made in the remedy, whenever a 'certain remedy' of a substantial character is left"). The Supreme Court of Florida has determined that, in situations like this, the following principles should be utilized to determine whether the remedy for wrongs provision has been violated:

> [W]here a right of access to the courts for redress for
> a particular injury has been provided by statutory
> law predating the adoption of the Declaration of
> Rights of the Constitution of the State of Florida, or
> where such right has become part of the common
> law of the State pursuant to Fla. Stat. s. 2.01,
> F.S.A., the Legislature is without power to abolish
> such a right without providing a reasonable alter-
> native to protect the rights of the people of the State
> to redress for injuries, unless the Legislature can
> show an overpowering public necessity for the abol-
> ishment of such right, and no alternative method of
> meeting such public necessity can be shown.

*Kluger v. White*, 281 So. 2d 1, 4 (Fla. 1973). Professor Schuman has characterized the *Kluger* court's approach as involving the following "three-step combination of rules and balances": (1) the legislature may freely modify, reduce or eliminate post-constitutional causes of action created by the legislature itself; (2) the legislature may modify, reduce, or eliminate common-law or pre-constitutional statutory causes of action if it provides a reasonable alternative; and (3) the legislature may modify, reduce, or eliminate common law or pre-constitutional statutory causes of action if it establishes that no reasonable alternatives exist and that "an overpowering public necessity for the abolishment of such right" exists. Schuman, *supra*, at 1216–17. I conclude that these principles should be adopted in Wisconsin.

¶ 42. Applying these principles to the case at hand, I conclude that the legislature cannot eliminate Makos' right to bring a medical malpractice action under any of these three principles. First, the right to bring a medical malpractice action existed at common law; therefore, the legislature cannot freely eliminate Makos' right to bring such a claim. Second, the legisla-

ture did not provide a reasonable alternative to protect Makos' right to a remedy for her injuries; rather, it completely barred her from seeking any remedy. Third, as expressly indicated by the legislature, in 1975 it enacted ch. 655 in order to address the medical malpractice crisis of the 1970's. Wis. Stat. Ann. Ch. 655 (West 1995) (Historical and Statutory Notes). Accordingly, by the time the legislature enacted Wis. Stat. § 893.55(1)(b) in 1979–80, it had already addressed the problems created by this crisis in another manner. Therefore, it is clear that there was a reasonable alternative for meeting the public necessity created by the medical malpractice crisis, and it is further clear that the legislature consequently did not have an "overpowering public necessity" for the elimination of Makos' right. Thus, because Makos has a common-law and legislatively-recognized right to bring a medical malpractice action, and because the legislature may not eliminate this right under any of the above-explained principles, I conclude that the statute of repose denies Makos the right to a remedy in violation of art. I, § 9.

¶ 43. This conclusion is consistent with the historical purpose of art. I, § 9, *see* Schuman, *supra,* at 1200–01, as well as Wisconsin precedent, *see Collins,* 116 Wis. 2d at 181–82; *Mulder,* 95 Wis. 2d at 189–90 n.3; *Kallas,* 66 Wis. 2d at 384, 393; *see also Rod v. Farrell,* 96 Wis. 2d 349, 356, 291 N.W.2d 568 (1980) (discussing possible application of art. I, § 9), *overruled on other grounds, Hansen v. A.H. Robins, Inc.,* 113 Wis. 2d 550, 335 N.W.2d 578 (1983); *Rosenthal v. Kurtz,* 62 Wis. 2d 1, 8, 213 N.W.2d 741, 216 N.W.2d 252 (1974) (discussing possible application of art. I, § 9). In addition, this conclusion is supported by decisions from other jurisdictions, in which courts have determined that a medical malpractice statute of repose violates

the right to remedy provision of their respective state constitutions. *See McCollum v. Sisters of Charity of Nazareth Health Corp.*, 799 S.W.2d 15 (Ky. 1990); *Hardy v. VerMeulen*, 512 N.E.2d 626 (Ohio 1987), *cert. denied*, 484 U.S. 1066 (1988); *Nelson v. Krusen*, 678 S.W.2d 918 (Tex. 1984).

¶ 44. Furthermore, this conclusion does not conflict with *CLL Associates, Ltd. v. Arrowhead Pacific Corp.*, 174 Wis. 2d 604, 497 N.W.2d 115 (1993).[3] *See* dissenting op. at 80–83, 86–87. As the *CLL* court explained, tort actions are significantly distinct from contract actions. *Id.* at 609–13. Therefore, although a tort statute of limitation begins to run when an injured party discovers or reasonably should have discovered the injury, the same is not true in a contract cause of action. *Id.* 609–17. Accordingly, the court has recognized that different principles of law apply when considering a contract statute of limitations as opposed to a tort statute of limitations. *See id.* Thus, although it may not violate art. I, § 9 to bar a contract claim before the injured party knew or should have known of the injury, *see id.* at 614–15, the same reasoning does not necessarily apply to a tort cause of action. For this reason, I conclude that *CLL* is inapplicable in the present case.

¶ 45. Moreover, this court has recognized that "[m]edical malpractice actions are substantially distinct from other tort actions." *Strykowski*, 81 Wis. 2d at 509. Consequently, the same principles of law regard-

---

[3] Although *CLL* involved a statute of limitations, application of the statute of limitations had the same effect as application of the statute of repose in this case: it barred CLL from bringing a contract cause of action before it even discovered its injury. *See CLL Associates, Ltd. v. Arrowhead Pacific Corp.*, 174 Wis. 2d 604, 614, 497 N.W.2d 115 (1993).

ing a medical malpractice statute of repose may not apply when considering statutes of repose in other areas of tort law. Consequently, because medical malpractice actions are distinct from other types of actions, I do not conclude that all statutes of repose are unconstitutional. *See* dissenting op. at 82–84. I also do not conclude that the statute of repose at issue here is unconstitutional on its face, because only in rare situations, such as we have here, will it completely deny an individual the right to bring a malpractice action. *See* Lead op. at 49 n.7.

¶ 46. In short, I conclude that courts should consider the following three principles, along with the nature of the cause of action, in determining whether an individual has been denied the right to a remedy in violation of art. I, § 9 through the legislature's modification, reduction, or elimination of a right to bring a cause of action: (1) whether the legislature modified, reduced, or eliminated a post-constitutional cause of action created by the legislature itself; (2) whether the legislature modified, reduced, or eliminated a common law or pre-constitutional statutory cause of action and provided a reasonable alternative; and (3) whether, if the legislature did not provide a reasonable alternative, it has established that an overpowering public necessity for the abolishment of such right exists, and that no reasonable alternative exists. As previously explained, based on these three principles, along with the unique nature of medical malpractice actions, I conclude that the statute of repose contained in Wis. Stat. § 893.55(1)(b) deprives Makos of the right to a remedy in violation of art. I, § 9. Thus, I concur in the holding set forth in the lead opinion that, under these circumstances, the statute of repose is unconstitutional beyond a reasonable doubt. Accordingly, I join the

majority in reversing the circuit court's order and judgment, and remanding the cause for a trial.

¶ 47. ANN WALSH BRADLEY, J. (*dissenting*). I dissent. The certified issue in this case is the constitutionality of Wis. Stat. § 893.55(1)(b), which bars medical malpractice actions commenced more than five years after the date of the alleged act or omission, without regard to the date of discovery. While I believe that the statute produces a regrettably harsh result in this case, I nevertheless conclude that the plaintiffs have failed to demonstrate beyond a reasonable doubt that § 893.55(1)(b): 1) deprives the plaintiffs of their procedural or substantive due process rights; 2) deprives the plaintiffs of equal protection of the laws; or 3) violates Article I, § 9 of the Wisconsin Constitution. I also reject the assertion in Justice Bablitch's concurrence that § 893.55 does not apply to negligent diagnosis claims. Accordingly, I would affirm the decision of the circuit court.

## I. Due Process

¶ 48. I begin by addressing due process because the lead opinion relies primarily on a procedural due process analysis in reaching its conclusion that § 893.55(1)(b) is unconstitutional "as applied." A court must assess the following three factors when measuring the sufficiency of the procedural protections provided by the State: 1) the risk of an erroneous deprivation of the property interest through the procedure used; 2) the probable value of additional procedural safeguards; and 3) the governmental interest, including the function involved and physical, administrative, and fiscal burdens that additional procedural require-

68

ments would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

¶ 49. The lead opinion errs at the very outset of its due process analysis by assuming that the plaintiffs have a constitutionally recognized and protected property interest. In this case, Cheryl Makos and her family did not discover that they were injured by the 1985 misdiagnosis until after the original biopsy was re-examined in 1994 and found to be malignant. As such, the discovery rule delayed the accrual of the plaintiffs' cause of action until after they discovered, or in the exercise of reasonable diligence should have discovered, the existence of their injury and that the defendant, Dr. Bodemer, probably caused their injury. *See, e.g., Clark v. Erdmann*, 161 Wis. 2d 428, 445–46, 468 N.W.2d 18 (1991). There is no dispute that § 893.55(1)(b) extinguished the plaintiffs' claims in 1990, well before the plaintiffs' discovery would have triggered the accrual of a cause of action, and possibly before the plaintiffs were even injured. Thus, the statute at issue deprived the plaintiffs of an as yet unaccrued cause of action against the defendants.

¶ 50. Neither the United States Supreme Court nor this court has ever held that an unaccrued cause of action is a constitutionally protected property interest. In fact, case law demonstrates that the Due Process Clause takes no notice when a legislature alters or extinguishes an unaccrued cause of action. Where a cause of action has yet to accrue, the Supreme Court has held that due process principles do not prevent the creation of new causes of action or the abolition of old ones to attain proper legislative objectives. *Silver v. Silver*, 280 U.S. 117, 122 (1929).

¶ 51. In *Martin v. Richards*, 192 Wis. 2d 156, 531 N.W.2d 70 (1995), this court used a substantive due

process analysis to invalidate legislation which created a retroactive cap on medical malpractice liability.[1] However, before doing so, the court established that the claimants' cause of action had accrued prior to the effective date of the liability cap. On that basis, the *Martin* court concluded that the claimants had a substantive right to the unlimited damages allowed under state law at the time that their cause of action accrued. *Id.* at 199, 206. The *Martin* court considered accrual a condition precedent to the recognition of a cause of action as a constitutionally protected property right. *See also Hunter v. School Dist. of Gale-Ettrick-Trempealeau,* 97 Wis. 2d 435, 445–46, 293 N.W.2d 515 (1980) (collecting cases establishing that a cause of action is a vested property right entitled to due process protection only if it has accrued); *Mathis v. Eli Lilly & Co.,* 719 F.2d 134, 141 (6th Cir. 1983) ("In tort claims, there is no cause of action and therefore no vested property right in the claimant upon which to base a due process challenge until injury occurs").

¶ 52. In this case, § 893.55(1)(b) extinguishes an unaccrued cause of action, which is a nonvested property right. *Hunter,* 97 Wis. 2d at 446. Because their unaccrued cause of action was extinguished before it

---

[1] The lead opinion concedes that *Martin v. Richards,* 192 Wis. 2d 156, 531 N.W.2d 70 (1995), involved a substantive due process analysis. Lead op. at 47. However, reliance on substantive due process requires the lead opinion to inquire whether the legislation has a proper purpose, and whether the statutory means of effectuation bear a rational relationship to the purpose. *Szarzynski v. YMCA, Camp Minikani,* 184 Wis. 2d 875, 889, 517 N.W.2d 135 (1994). Because the lead opinion has declined to engage in such an inquiry, its substantive due process "analysis" begins and ends with the conclusory statement that § 893.55(1)(b) is "fundamentally unfair."

ever became a property right, the plaintiffs have no basis upon which to rest a due process challenge.

¶ 53. Even if I were to assume that the plaintiffs' unaccrued cause of action was a property right warranting constitutional protection, which I do not, the United States Supreme Court has already held that procedural due process considerations generally will not invalidate State-created substantive defenses:

> Of course, the State remains free to create substantive defenses or immunities for use in adjudication. . . . The Court held as much [when]. . .it upheld a California statute granting officials immunity from certain types of state tort claims. We acknowledged that the grant of immunity arguably did deprive the plaintiffs of a protected property interest. But they were not thereby deprived of property without due process, just as a welfare recipient is not deprived of due process when the legislature adjusts benefit levels. In each case, the legislative determination provides all the process that is due[, for] it remain[s] true that the State's interest in fashioning its own rules of tort law is paramount to any discernible federal interest, except perhaps an interest in protecting the individual citizen from state action that is wholly arbitrary or irrational. . . .[I]t may well be that a substantive immunity defense, like an element of the tort claim itself, is merely one aspect of the State's definition of that property interest.

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432–33 (1982) (citations and internal quotation marks omitted). The due process guarantees under the Wisconsin Constitution track those under the Federal Constitution. *Reginald D. v. State*, 193 Wis. 2d 299, 307, 533 N.W.2d 181 (1995). The procedural component of the

71

Fourteenth Amendment's Due Process Clause does not require any more process than the legislature has given in enacting § 893.55(1)(b). I therefore conclude that the statute in no way abridges the plaintiffs' procedural due process rights.

¶ 54. In truth, this case has little to do with procedural due process. As I read the lead opinion, no number of hearings or other additional procedural safeguards would save the statute at issue in this case. Rather, the lead opinion's quarrel with the statute is ultimately rooted in a disagreement with the legislature over the propriety of immunizing health care providers from the "long tail" liability associated with certain types of medical malpractice. Essentially, the lead opinion objects on "fundamental fairness" grounds to any time period limitation on the discovery rule. However, "fundamental fairness" is a hollow invocation when it is unaccompanied by an analysis of the substantive due process considerations underpinning the phrase.

¶ 55. This court is generally ill-equipped as an institution to second guess a legislative grant of immunity which attempts to address economic threats to services important to the public. As a rule, such a legislative enactment "does not violate substantive due process if it bears a rational relationship to the underlying legislative purpose." *Szarzynski v. YMCA, Camp Minikani*, 184 Wis. 2d 875, 889, 517 N.W.2d 135 (1994); *see also Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 83–4 (1978) (holding that "legislative effort[s] to structure and accommodate the burdens and benefits of economic life" do not violate due process unless "the legislature has acted in an arbitrary or irrational manner") (citation and internal quotation marks omitted).

¶ 56. There are at least three reasons for concluding that § 893.55(1)(b) does, in fact, vindicate legitimate legislative goals. First, the statute encourages participation in the health care profession by giving finality to health care providers who would otherwise face prolonged and uncertain liability. Second, by limiting certain types of "long tail" liability, § 893.55(1)(b) enhances the insurability of health care providers. Finally, by encouraging participation in the health care profession and reducing "long tail" liability, the statute secures affordable, quality health care for the citizens of Wisconsin.

¶ 57. I cannot conclude that the legislature has acted "arbitrarily" or "irrationally" in placing a five-year limit on the accrual of a medical malpractice cause of action. The legislature created § 893.55 in response to the medical malpractice crisis of the 1970's. *See* Redish, *Legislative Response to the Medical Malpractice Insurance Crisis: Constitutional Implications*, 55 Tex. L. Rev. 759, 759–60 (1977). As the lead opinion notes, the 1976 staff paper prepared for the Malpractice Committee of the Wisconsin Legislative Council estimated that 98.9% of adult claimants and 95% of child claimants file medical malpractice claims within five years of the occurrence of the alleged negligence. Lead op. at 49 n. 7.

¶ 58. The staff report suggests that the five-year limit on commencement of a suit would negatively affect only a small percentage of malpractice claims. The legislature had to balance the interests of that small percentage of claimants against the interests served by the enactment of the five-year statute of repose. In balancing the interests, the legislature apparently concluded that public policy was best served by cutting off medical malpractice claims not

commenced within five years of the act giving rise to the claim. While such a decision may be disagreeable and even harsh, it is rationally related to the legitimate goal of relieving health care providers of perpetual malpractice liability.

¶ 59. In summary, because the plaintiffs' unaccrued cause of action is not a vested property right, there is no due process basis for challenging § 893.55(1)(b). Furthermore, even assuming *arguendo* that the plaintiffs' unaccrued cause of action does constitute a property right warranting due process protection, I conclude that the plaintiffs are owed no more procedural protections than the legislature has given in determining to enact § 893.55(1)(b), and that the statute is rationally related to a legitimate legislative purpose. I therefore find that § 893.55(1)(b) does not violate the plaintiffs' due process rights.

## II. Equal Protection[2]

¶ 60. I also reject the plaintiffs' assertion that § 893.55(1)(b) denies them equal protection of the laws. Because the statute does not implicate "fundamental rights" or "suspect classifications," the rational basis test applies. *See Kukor v. Grover*, 148 Wis. 2d 469, 495, 436 N.W.2d 568 (1989). The statute "must be sustained

---

[2] The equal protection provisions of the Wisconsin Constitution parallel those guaranteed under the Fourteenth Amendment to the United States Constitution. *Reginald D. v. State,* 193 Wis. 2d 299, 307, 533 N.W.2d 181 (1995). The plaintiffs make the argument that § 893.55(1)(b) constitutes "special privilege legislation." Because equal protection analysis subsumes the question of whether a statute impermissibly confers special privileges on a class, I treat both issues under equal protection. *See Christoph v. Chilton,* 205 Wis. 418, 421, 237 N.W. 134 (1931).

unless it is patently arbitrary and bears no rational relationship to a legitimate government interest." *State v. McManus*, 152 Wis. 2d 113, 131, 447 N.W.2d 654 (1989) (citation and internal quotation marks omitted).

¶ 61. Substantive due process and equal protection analysis have much in common. I have already determined under a substantive due process analysis that § 893.55(1)(b) bears a rational relationship to the eminently reasonable legislative goal of maintaining the continued quality of health care and the economic vitality of the health care industry. Under equal protection analysis, there must be a rational relationship between the disparity in treatment resulting under a statute and a legitimate governmental objective. *See State v. Post*, 197 Wis. 2d 279, 319, 541 N.W.2d 115 (1995).

¶ 62. Under the rational basis test, the classifications achieved by a statute are scrutinized under "a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classification is neither possible nor necessary." *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 314 (1976). A statute does not violate equal protection merely because its classifications are "imperfect," lack "mathematical nicety," or "result[ ] in some inequity." *Schweiker v. Wilson*, 450 U.S. 221, 234 (1981). As long as the classification scheme chosen by our legislature rationally advances a proper objective, "we must disregard the existence of other methods of allocation that we, as individuals, perhaps would have preferred." *Id.*

¶ 63. The "health care provider" classification is a reasonable one. This court has already determined

that legislative action affecting medical malpractice is justified by the distinct nature of the field. *State ex rel. Strykowski v. Wilkie*, 81 Wis. 2d 491, 509, 261 N.W.2d 434 (1978). It follows that the "health care provider" classification, composed of medical malpractice defendants, is reasonably constituted. Additionally, the class is susceptible to expansion as circumstantially warranted. *See, e.g., Clark*, 161 Wis. 2d at 439 (holding that a podiatrist is a "health care provider" under § 893.55); *Ritt v. Dental Care Associates, S.C.*, 199 Wis. 2d 48, 543 N.W.2d 852 (Ct. App. 1995) (holding that a dentist is a "health care provider" under § 893.55).

¶ 64. Unlike the plaintiffs, I do not find it constitutionally significant that the term "health care provider" omits blood banks and pharmaceutical and medical device companies. *See Doe v. American Nat'l Red Cross*, 176 Wis. 2d 610, 616–17, 500 N.W.2d 264 (1993). Section 893.55(1)(b) is addressed to a crisis affecting the provision of health care, and provides a degree of immunity from tort claims to those who diagnose, treat, or care for patients. As we noted in *Doe*, blood banks and pharmaceutical and medical device companies take no part in diagnosing, treating, or caring for patients. *Id.* They are therefore not part of the crisis that § 893.55(1)(b) was intended to partially ameliorate. This distinction, recognized by this court in *Doe*, is rationally related to the goal of limiting the "long tail" liability of those who actually provide health care to patients.

¶ 65. Section § 893.55(1)(b) does not suffer the classification infirmities recognized in *Kallas Millwork Corp. v. Square D Co.*, 66 Wis. 2d 382, 225 N.W.2d 454 (1975), and *Funk v. Wollin Silo & Equipment, Inc.*, 148 Wis. 2d 59, 435 N.W.2d 244 (1989). In both *Kallas* and *Funk*, this court invalidated on equal protection

grounds limitations statutes dealing with actions arising from improvements to real estate. *Funk* described the fundamental flaw in both versions of the statute:

> Much of our decision herein is a matter of *stare decisis* based on *Kallas*. We invalidated the predecessor of this statute because no reasonable distinction could be found between the builders in the protected class and others like materialmen and owners who were not protected by the statute. As pointed out above, furnishers of materials and land surveyors have now been included in the protected class. No doubt, this reduces the under-inclusiveness of the statute, but owners or occupants who may be liable to suit by third parties as the result of design defects or construction errors or omission are not in the protected class.

148 Wis. 2d at 73. Thus, the statutes at issue in *Kallas* and *Funk* violated equal protection by granting, without a rational basis, the benefit of a limitation period to one group while denying the same benefit to a similarly situated group.

¶ 66. The under-inclusiveness problems present in *Kallas* and *Funk* are absent in the instant case. No such defect exists in this case, because, with one notable exception, § 893.55(1)(b) applies across the board to those providing health care to patients.[3] I therefore

---

[3] As the plaintiffs note, § 893.55(3) removes the five-year limit on discovery of foreign objects that have been left in a patient's body. However, this is hardly an arbitrary subclassification of health care providers, for it is reasonable that § 893.55 would carve out exceptions to the five-year period of repose for those acts or omissions that the legislature has determined are particularly egregious. *See also* § 893.55(2) (providing an exception to the five-year repose period when a health care provider conceals his or her injurious act or omission).

conclude that the statute's classification of medical malpractice defendants does not violate equal protection.

¶ 67. The plaintiffs next argue that the classification of medical malpractice claimants is not rational. For example, they note that two victims of identical negligent acts are treated differently under the statute, since the one who commences a suit within five years of the negligent act will be allowed to proceed, while the other will be barred if he or she commences a suit after the five-year period. I cannot conclude that such a time-based classification is irrational, since by their nature, every statute of limitations and statute of repose must make such a distinction. I conclude that the statute at issue makes a rational distinction between claimants commencing an action within five years and those filing after five years.

¶ 68. I also reject the plaintiffs' assertion that treating medical malpractice claimants differently from other tort claimants violates equal protection. This court has previously considered and rejected such an argument, *Strykowski*, 81 Wis. 2d at 507–9, and I see no reason to depart from precedent.

¶ 69. In sum, the distinctions created by § 893.55(1)(b) do not suffer classification infirmities, and are rationally related to a legitimate legislative objective. I therefore conclude that § 893.55(1)(b) does not violate the constitutional guarantee of equal protection of the laws.

*III. Article I, § 9 of the Wisconsin Constitution*

*The Lead Opinion*

¶ 70. The plaintiffs assert, and the lead opinion concludes, that § 893.55(1)(b) violates the "remedy for

78

wrongs" section of the Wisconsin Constitution. Citing *Kallas*, 66 Wis. 2d at 384, 393. Article I, § 9 of the Wisconsin Constitution provides:

> Remedy for wrongs. Section 9. Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws.

I conclude that precedent establishes that § 893.55(1)(b) does not violate Wis. Const. art. I, § 9.

¶ 71. This court has previously elucidated the meaning of the "remedy for wrongs" clause:

> That section, though of great importance in our jurisprudence, is primarily addressed to the right of persons to have access to the courts and to obtain justice on the basis of the law as it in fact exists. No legal rights are conferred by this portion of the Constitution.

*Mulder v. Acme-Cleveland Corp.*, 95 Wis. 2d 173, 189, 290 N.W.2d 276 (1980) (footnote omitted). The *Mulder* court emphasized that its prior Wis. Const. art. I, § 9 analysis in *Kallas* stood for no more than the proposition that the "remedy for wrongs" section might have "possible application. . .where a remedy is sought for a 'legislatively *recognized right*.' " *Mulder*, 95 Wis. 2d at 189–90 n.3 (emphasis in original).

¶ 72. In the present case, the lead opinion presumably acknowledges that the legislature does not recognize a right to commence a medical malpractice action more than five years after a health care provider's allegedly negligent act or omission. Undaunted,

79

the lead opinion nevertheless concludes that Wis. Const. art. I, § 9 invalidates § 893.55(1)(b).

¶ 73. The lead opinion attempts, but fails, to distinguish this court's decision in *CLL Assocs. v. Arrowhead Pacific Corp.*, 174 Wis. 2d 604, 497 N.W.2d 115 (1993). In *CLL*, we held that § 893.43, the six-year statute of limitations for contract actions, does not violate Wis. Const. art. I, § 9. Under § 893.43, a contract cause of action accrues at the moment of breach, rather than at the moment that the injured party discovers the breach. *CLL*, 174 Wis. 2d at 607. The plaintiff in *CLL* complained that the effect of the statute was to cut off a cause of action before the plaintiff could have discovered the underlying injury, in violation of the right to a remedy under Wis. Const. art. I, § 9. This court rejected the plaintiff's Wis. Const. art. I, § 9 challenge, concluding that the "remedy for wrongs" provision was not violated merely "because the limitations period expired before CLL discovered its injury." *CLL*, 174 Wis. 2d at 614.

¶ 74. In the lead opinion's view, *CLL* is distinguishable on the following basis:

> *CLL* involved a statute of limitations while this case involves a statute of repose. These are distinct legal concepts that deserve to be treated as such. Because we recognize the legal distinction between a statute of limitations and a statute of repose, we find *CLL* inapplicable to the case at bar.

Lead op. at 51–52 (footnote omitted). However, *CLL* itself demonstrates that the lead opinion's distinction between statutes of limitations and repose for purposes of Wis. Const. art. I, § 9, is infirm.

¶ 75. The *CLL* court concluded that § 893.43, a statute of limitations, does not violate Wis. Const. art.

I, § 9, by extinguishing a claimant's cause of action before the claimant discovers the injury. As support for its conclusion, the *CLL* court cited *Halverson v. Tydrich*, 156 Wis. 2d 202, 456 N.W.2d 852 (Ct. App. 1990), which held that § 893.55(1)(b), the very statute of repose at issue in this case, also does not violate Wis. Const. art. I, § 9. *CLL*, 174 Wis. 2d at 614. Indeed, *CLL* unequivocally endorsed the *Halverson* analysis of Wis. Const. art. I, § 9. *Id.* at 616 ("The reasoning in *Halverson* applies to the instant case").

¶ 76. Under the *CLL* analysis, this court considers statutes of limitations and repose to be interchangeable for purposes of Wis. Const. art. I, § 9. The lead opinion in this case must disown its own reasoning and citations to authority in *CLL* in order to achieve the desired result in this case. The effect is a *sub silentio* overruling of this court's decision in *CLL* and the court of appeals' decision in *Halverson*. I conclude that the reasoning of *CLL* and *Halverson* is sound and applies in the instant case.

¶ 77. As I understand the lead opinion, a statute of repose is unconstitutional if it places any time period limitation on the accrual of a cause of action, because it is unfair to "close the doors of the courtroom" before a claimant could reasonably discover his or her injury. Since all statutes of repose create such a time limitation on accrual, it appears that the lead opinion would invalidate all statutes of repose. Furthermore, because the lead opinion's distinction between statutes of limitations and repose is hollow, today's decision carries grave implications for any statute which places any time limit on the discovery rule.

81

¶ 78. Under *CLL*, § 893.51(1)[4] is presumably constitutional, since "[d]etermining when a cause of action accrues for statute of limitations purposes is a policy decision, not an issue of constitutional dimension." *CLL*, 174 Wis. 2d at 614. Yet, the effect on a claimant under § 893.51(1) is no different than under § 893.55(1)(b)—the claimant loses the ability to bring a cause of action that he or she has no reason to know existed. Under the lead opinion's reasoning, this fact would appear to render § 893.51(1) unconstitutional.

¶ 79. I do not believe that constitutional guarantees rise or fall on empty legal distinctions. Whether it is labeled a statute of limitations or repose, the result is the same in both cases—the ability to commence an action is extinguished before the claimant could reasonably discover his or her injury. For that reason, consistent with *CLL* and *Halverson*, I conclude that Wis. Const. art. I, § 9, does not prevent the legislature from enacting legislation which extinguishes an unaccrued cause of action for medical malpractice.

¶ 80. It is crucial to note that the lead opinion's repeated statement that § 893.55(1)(b) is only unconstitutional "as applied" disguises the true scope of its decision. If the lead opinion's reasoning were correct, there is no possible conclusion other than that the statute of repose is unconstitutional on its face. This is so because the reasoning of the lead opinion would

---

[4] Wis. Stat. § 893.51(1) states that actions for the wrongful taking of personal property must be commenced within six years after a cause of action accrues. The statute also provides that such a cause of action accrues at the time that the property is taken. The Judicial Council Committee note accompanying the statute makes explicit the legislature's intent that the cause of action accrue without regard to a claimant's knowledge of the wrongful taking.

82

require that the statute of repose be found unconstitutional in every case in which a claimant discovers a cause of action more than five years after the negligent act or omission. *See United States v. Salerno*, 481 U.S. 739, 754 (1987) (noting that a statute is facially unconstitutional when "no set of circumstances exists under which the [statute] would be valid"). The lead opinion's reasoning renders unconstitutional this statute of repose, and arguably renders unconstitutional all statutes of repose. *See* Wis. Stat. §§ 893.37, 893.59, 893.66(1). If this is what the lead opinion intends to do, then it should be acknowledged and clearly stated.

*Justice Crooks' Concurrence*

¶ 81. Justice Crooks' concurrence, which is premised solely on Wis. Const. art. I, § 9, merely expands on the lead opinion's erroneous analysis of the same constitutional provision. Essentially, the concurrence concludes that § 893.55(1)(b) violates Wis. Const. art. I, § 9 because: 1) a remedy for medical malpractice existed at common law; 2) the legislature barred Makos' medical malpractice claim without providing a "reasonable alternative"; and 3) no "overpowering public necessity" justified the legislature's action, because the medical malpractice crisis ended when the legislature enacted Chapter 655. Justice Crooks' concurrence at 64–65. I disagree.

¶ 82. I do not believe that Wis. Const. art. I, § 9 stands as an obstacle to the legislative alteration or abolition of common law rights of action. One commentator on the subject is worth quoting at length, for he amply refutes the notion that Wis. Const. art. I, § 9 exists as anything more than a constitutional guarantee of judicial independence:

83

The historical origins of the open courts clause do not support the proposition that it was intended to be a "remedies" clause, as that term is used today. Courts which seek to prohibit legislatures from limiting existing remedies through duly enacted legislation must find the source of their authority somewhere other than the open courts clause of their state constitutions.

An open courts clause analysis consistent with the origins of the provision should focus not on whether the legislature has abolished a "remedy" but on whether the challenged action compromises the judiciary as an independent branch of government. . . . [W]hen the legislature clearly expresses its desire to limit the remedies available, the court should be especially cautious before striking down such a law, lest the open courts clause be used to undermine the very separation of powers which the provision was intended to foster. . . .

The common law has always evolved to meet changing circumstances and should continue to do so. It is quite another thing to suggest that the open courts clause *requires* a remedy for every right or, put another way, that it forbids the legislature from altering or even abolishing remedies through duly enacted legislation.

Jonathan M. Hoffman, *By the Course of the Law: The Origins of the Open Courts Clause of State Constitutions*, 74 Or. L. Rev. 1279, 1316–17 (1995) (emphasis in original) (hereinafter Origins of the Open Courts Clause).

¶ 83. The concurrence apparently believes that the statute of repose was not aimed at the medical malpractice crisis of the 1970s because it was created four years after the enactment of Chapter 655. Justice Crooks' concurrence at 65. I am not sure what rele-

vance the chronology of the two statutory enactments has to the legislative purpose underlying them. However, I am certain that the legislature was not required to address every facet of the medical malpractice crisis with Chapter 655.

¶ 84. The medical malpractice crisis was not created in a day, and the legislature was not required to solve it all at once in Chapter 655. Indeed, the medical malpractice crisis did not vanish overnight with the enactment of Chapter 655. I therefore conclude that the concurrence lacks a basis for implying that § 893.55 was not justified by the "overpowering public necessity" of addressing the medical malpractice crisis.

¶ 85. I also do not find illuminative the concurrence's citation to foreign jurisdictions which have struck down medical malpractice statutes of repose under state constitutional provisions analogous to Wis. Const. art. I, § 9. Justice Crooks' concurrence at 65–66. The case law dealing with "open courts" clauses similar to Wis. Const. art. I, § 9 is in a state of "total disarray." *Origins of the Open Courts Clause*, 74 Or. L. Rev. at 1282 (citing David Schuman, *The Right to a Remedy*, 65 Temp. L. Rev. 1197, 1203 (1992)). I see no need to wade into the morass.

¶ 86. In his concurrence, Justice Crooks repeats the lead opinion's error by attempting to distinguish *CLL*. The concurrence states that "although it may not violate art. I, § 9 to bar a contract claim before the injured party knew or should have known of the injury. . .the same reasoning does not necessarily apply to a tort cause of action." Justice Crooks' concurrence at 66 (citation omitted). This contrived distinction between contract and tort actions, which was flatly rejected by *CLL*, destroys any merit that the concur-

85

rence's three-step Wis. Const. art. I, § 9 analysis might have possessed.

¶ 87. The common law recognized a breach of contract cause of action; the statute at issue in *CLL*, § 893.43, extinguished an undiscovered breach of contract claim without providing any "reasonable alternative"; and no "overpowering public necessity" was even asserted in *CLL* for the legislature's action. Thus, under the concurrence's own analysis, the statute at issue in *CLL* should have been declared violative of Wis. Const. art. I, § 9. There is simply no principled basis for concluding on the one hand that the *CLL* statute does not violate Wis. Const. art. I, § 9, but on the other hand that the statute at issue here does. The two statutes must stand or fall together because their effect is identical.

¶ 88. The *CLL* court did not recognize a contract/tort distinction for purposes of its Wis. Const. art. I, § 9 analysis. It concluded that § 893.43 does not violate Wis. Const. art. I, § 9 by extinguishing an undiscovered contract cause of action. In marshaling authority for its conclusion, the *CLL* court cited *Halverson*. In *Halverson*, the court of appeals held that the very statute at issue in this case did not violate Wis. Const. art. I, § 9 by extinguishing a tort claim for medical malpractice. The *CLL* court also cited *Yotvat v. Roth*, 95 Wis. 2d 357, 369–70 (Ct. App. 1980), which involved an action for wrongful death resulting from negligent diagnosis. Consistent with the *CLL* court's citation to *Halverson* and *Yotvat*, I conclude that the Wis. Const. art. I, § 9 analysis is the same for both contract and tort causes of action.

¶ 89. The concurrence makes a further baseless distinction. Citing *Strykowski*, 81 Wis. 2d at 509, the concurrence determines that Wis. Const. art. I, § 9 is

not only more solicitous of tort actions than of contract actions, but it is particularly concerned with tort claims alleging medical malpractice. Justice Crooks' concurrence at 66–67. The concurrence's reliance on *Strykowski* is misplaced, however, because Strykowski stands for the proposition that the unique nature of medical malpractice claims makes them amenable to legislative alteration, whereas the concurrence believes that the nature of medical malpractice claims prevents the legislature from altering them.

¶ 90. For the foregoing reasons, I conclude that the concurrence, like the lead opinion, has erroneously determined that § 893.55(1)(b) violates art. I, § 9 of the Wisconsin Constitution.

## IV. Negligent Diagnosis Claims Under § 893.55

¶ 91. In his concurrence, Justice Bablitch concludes that a negligent diagnosis is not treatment for purposes of § 893.55, and that the statute is therefore inapplicable to this case. The concurrence's determination is flawed for several reasons.

¶ 92. First, recent decisions of this court have rejected the distinction relied upon by Justice Bablitch. For example, in *Doe*, 176 Wis. 2d at 616–17, this court determined that blood banks are not "health care providers" for purposes of invoking § 893.55. A unanimous court stated that:

> The Red Cross is not involved in the diagnosis, treatment or care of patients as are podiatrists. The Red Cross is not licensed to practice medicine by the state of Wisconsin or any medical examining board. . . . [W]e reject the Red Cross' argument that this case is similar to claims against radiologists or pathologists who have no direct patient contact but fall within the scope of sec. 893.55. The Red Cross is

not involved in diagnosing and recommending treatment for patients as are radiologists and pathologists.

*Id.* I submit that Justice Bablitch's view that diagnosing physicians fall outside of § 893.55 is utterly at odds with *Doe*.

¶ 93. Furthermore, this court concluded only two terms ago that misdiagnosis and treatment are indistinguishable for purposes of the informed consent statute:

> Certainly, procedures which are purely diagnostic in nature are not excluded from sec. 448.30's reach. . . .The distinction between diagnostic and medical treatments is not in and of itself significant to an analysis of informed consent.

*See Martin*, 192 Wis. 2d at 175. Indeed, both parties agreed at oral argument that it would be inconsistent with *Martin* to hold in this case that § 893.55 does not cover negligent diagnosis. I find unpersuasive the concurrence's attempt to distinguish *Martin*.

¶ 94. Second, the court of appeals squarely addressed this issue just last year:

> The standard medical malpractice jury instruction, WIS JI-CIVIL 1023, does not specifically instruct as to negligent diagnosis. However, diagnosis is considered "care and treatment."

*Finley v. Culligan*, 201 Wis. 2d 611, 622, 548 N.W.2d 854 (Ct. App. 1996) (citing *Miller v. Kim*, 191 Wis. 2d 187, 198, 528 N.W.2d 72 (Ct. App. 1995).

¶ 95. Third, by removing diagnosing physicians from the protection of § 893.55, the concurrence would create a statutory classification scheme which may violate equal protection. It is difficult to discern a rational

basis for treating diagnosing health care providers differently from other health care providers. The concurrence makes no attempt to justify the disparate treatment of health care providers achieved under its reading of § 893.55. In avoiding the constitutional basis for the lead opinion's decision, the concurrence would merely substitute a real constitutional problem for the one imagined by the lead opinion, and would overrule three recent cases in the process.

¶ 96. Finally, while the concurrence finds the legislative history of the informed consent statute significant, it takes no notice of the Judicial Council Committee note accompanying Wis. Stat. § 893.55. The note states without limitation that:

> This section has been created to precisely set out the time periods within which an action to recover damages for medical malpractice must be commenced. The time provisions apply to any health care provider in Wisconsin.
>
> Sub. (1) contains the general time limitations for commencing a malpractice action. The subsection requires that such an action be commenced not later than 3 years from the event constituting the malpractice or not more than one year from the time the malpractice is discovered by the patient or should have been discovered by the patient. The patient has either the 3-year general time period or the one-year time period from the date of discovery, whichever is later. Subsection (1) further provides that in no event may a malpractice action be commenced later than 6 [5] years from the date of the alleged act or omission.

¶ 97. As is apparent from the committee note, the legislative history supports the proposition that the legislature intended that § 893.55 apply generally to

medical malpractice claims, with no exception for medical malpractice actions predicated on negligent diagnosis.

¶ 98. For all of these reasons, I conclude that negligent diagnosis is treatment for purposes of § 893.55.

*Conclusion*

¶ 99. I conclude that the plaintiffs have failed to demonstrate beyond a reasonable doubt that § 893.55(1)(b) is unconstitutional. The lead opinion believes that it is unfair to the plaintiffs to extinguish a cause of action before it even arises. I agree. The lead opinion is of the opinion that it is bad public policy to do so. I agree. However, I disagree with the lead opinion because it fails to provide an analysis which can sustain a conclusion that the statute is unconstitutional. We are left, therefore, with the lead opinion's determination of what constitutes good public policy versus the legislature's determination of what constitutes good public policy.

¶ 100. The institutional legitimacy of the judiciary is at a low ebb when a court errs by substituting its "better" public policy vision for the one enacted by the legislature. The lead opinion has committed such an error by mistaking its conception of sound public policy for a constitutional mandate.

¶ 101. In addition, the lead opinion and the concurrence by Justice Crooks have erred in determining that § 893.55(1)(b) violates Wis. Const. art. I, § 9. Prior case law demonstrates that Wis. Const. art. I, § 9 creates no rights and does not preclude the legislature from altering or extinguishing an undiscovered cause of action. For purposes of Wis. Const. art. I, § 9 analysis, the distinctions made by the concurrence between contract, tort, and medical malpractice claims are

baseless. The concurrence also lacks a basis for asserting that because the legislature enacted laws in 1975 in an attempt to address the medical malpractice crisis, it could not have been similarly motivated four years later when it enacted the § 893.55(1)(b) statute of repose. I conclude that Wis. Const. art. I, § 9 does not prevent the legislature from setting a five-year time limit on the commencement of medical malpractice actions.

¶ 102. Finally, I conclude that Justice Bablitch's concurrence is premised on a legal theory not raised in either the circuit court, the court of appeals, the petition for review, or the briefs to this court. The theory was rejected by both parties at oral argument before this court, and is contrary to precedent, the language of the statute, and the statute's legislative history. I therefore also reject it.

¶ 103. For the foregoing reasons, I respectfully dissent.

¶ 104. I am authorized to state that Chief Justice Shirley S. Abrahamson joins this opinion.